NORTHRIDGE COMPANY, a partnership and Southridge Company, a partnership, Plaintiffs-Appellants,

v.

W.R. GRACE & COMPANY, Defendant-Respondent.

Supreme Court

*No. 90-1406. Argued May 29, 1991.—Decided June 24, 1991.*

(Also reported in 471 N.W.2d 179.)

For the plaintiffs-appellants there were briefs (in the court of appeals) by *John A. Busch, James E. Bauman, Paul F. Linn* and *Michael, Best & Friedrich,* Milwaukee and oral argument by *Mr. Busch.*

For the defendant-respondent there was a brief (in the court of appeals) by *Thomas G. Cannon, William A. Wiseman, Dean P. Laing* and *O'Neil, Cannon & Holl-*

*man, S.C.,* Milwaukee and oral argument by *Thomas G. Cannon.*

SHIRLEY S. ABRAHAMSON, J. This is an appeal from an order of the circuit court for Milwaukee County, John E. McCormick, Circuit Judge, dismissing the complaint for failure to state a claim upon which relief can be granted. This court took the appeal on the plaintiffs' petition to bypass the court of appeals. Section 808.05 and sec. (Rule) 809.60, Stats. 1989–90.

The plaintiffs, Northridge Company and Southridge Company, filed a complaint against the defendant, W.R. Grace and Company, alleging breach of warranty and several tort claims based on the defendant's sale of Monokote, a fireproofing material, to the plaintiffs' general contractor for use in the construction of the plaintiffs' shopping centers. The complaint alleges that the Monokote was in a defective condition and, because it contains asbestos, presented unreasonable danger to persons and property. The plaintiffs assert that the asbestos contaminated the building and they suffered damages by incurring expenses for inspection, testing and removal of Monokote and by a diminished value of the property.

The question we consider in this case is whether the plaintiffs' complaint states a tort claim for relief in strict products liability or negligence.

The circuit court determined that the plaintiffs' claimed damages in this case did not result from "damage to other property" but instead were solely economic losses unrelated to any physical harm to property. Relying on *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.,* 148 Wis. 2d 910, 437 N.W.2d 213 (1989), and *East River Steamship Corp. v. Transamerica Delaval Inc.,* 476 U.S. 858 (1986), the circuit court concluded that the "doctrine of economic loss" precludes the plain-

tiffs' tort claims of negligence and strict liability. According to the circuit court, "the doctrine of economic loss . . . provides that 'a commercial purchaser of a product cannot recover solely economic losses from the manufacturer under negligence or strict liability theories,' " citing *Sunnyslope*. The circuit court thus denied recovery in tort when the only damage in this case was, in its view, to the product sold. The circuit court concluded that only a contract action for breach of warranty lies and that the statute of limitations barred the plaintiffs' warranty claim. The circuit court dismissed the plaintiffs' complaint, holding that it presented no claim upon which relief could be granted.

We conclude that the complaint in this case can be interpreted as alleging that a defect in the product has caused physical harm to property, property other than the product itself. The alleged physical harm to other property consists of the contamination of the plaintiffs' buildings with asbestos from the defendant's product, posing a health hazard. Accordingly we conclude that the complaint states a tort claim for relief in strict products liability and negligence. We reverse the order of the circuit court and remand the cause to the circuit court for further proceedings consistent with this opinion.

The question whether the plaintiffs' complaint has stated a claim for relief is a question of law we decide independently without deference to the circuit court. The facts set forth in the complaint must be taken as true and the complaint dismissed only if it appears certain that no relief can be granted under any set of facts that the plaintiffs might prove in support of their allegations. *Kranzush v. Badger State Mut. Cas. Co.*, 103 Wis. 2d 56, 82, 307 N.W.2d 256 (1981). The reviewing court must construe the facts set forth in the complaint and all

reasonable inferences that may be drawn from those facts in favor of stating a claim. *Evans v. Cameron,* 121 Wis. 2d 421, 426, 360 N.W.2d 25 (1985).

The plaintiffs' shopping centers were built in 1970 and 1972 by a general contractor who is not a party to this action. The defendant sold Monokote to the general contractor, who applied it to the beams and columns of the buildings. Monokote contains asbestos. Because of an alleged health hazard created by the asbestos, the plaintiffs apparently initiated an asbestos abatement program in the shopping centers sometime in the mid-1980's. The plaintiffs subsequently sold the shopping centers in 1988. The plaintiffs allege that they expended funds in the asbestos abatement program, that the Monokote reduced the value of their property, and that they received a lower price on the sale of the shopping centers because the Monokote damaged the buildings.

It is well-established law that under Wisconsin strict products liability law a plaintiff may recover for physical harm to property caused by a defect in the product that presents an unreasonable danger to persons or property. The rule of strict products liability set forth in the Restatement (Second) of Torts (1965), sec. 402A, and in *Dippel v. Sciano,* 37 Wis. 2d 443, 459, 155 N.W.2d 55 (1967), provides:

> One who sells any product in a defective condition unreasonably dangerous to the user or consumer or *to his property* is subject to liability for *physical harm* thereby caused to the ultimate user or consumer or *to his property* . . . (emphasis added).

Numerous cases support the rule that strict products liability law[1] and negligence law[2] apply to physical

---

[1]See, e.g., *City of Franklin v. Badger Ford Truck Sales, Inc.,*

924

harm to property as well as to personal injury.

The parties assume that Wisconsin has adopted some form of the "economic loss doctrine" which may preclude recovery in a negligence or strict products liability torts claim when the complainant's claim is characterized as solely economic loss.[3] "Economic loss" may be defined generally as "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufac-

58 Wis. 2d 641, 649, 207 N.W.2d 866 (1973); *City of LaCrosse v. Schubert, Schroeder & Assoc.*, 72 Wis. 2d 38, 44, 240 N.W.2d 124 (1976); *Wisconsin Power & Light Co. v. Westinghouse Elec. Corp.*, 830 F.2d 1405, 1409 and n.1 (7th Cir. 1987); *Tony Spychalla Farms, Inc. v. Hopkins Agricultural Chemical Co.*, 151 Wis. 2d 431, 434, 444 N.W.2d 743 (Ct. App. 1989). See also Comment, *Recovery for Economic Loss Under a Products Liability Theory: From the Beginning Through the Current Trend*, 70 Marq. L. Rev. 320, 343 (1987).

[2]See, e.g., *Marsh Wood Products Co. v. Babcock & Wilcox Co.*, 207 Wis. 209, 226, 240 N.W.2d 392 (1932); *A.E. Investment Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 485–86, 214 N.W.2d 764 (1974).

[3]For discussions of tort actions and economic loss, *see generally*, Prosser and Keeton on Torts, secs. 95–95A, p. 677 (5th ed. 1984); 1A L.R. Frumer and M.I. Friedman, Products Liability, sec. 3.01 [2][f] (1991); American Law of Products Liability 3d, sec. 60.20 (1987); Comment, *Recovery for Economic Loss Under a Products Liability Theory: From the Beginning Through the Current Trend*, 70 Marq. L. Rev. 320 (1987); Comment, *Manufacturers' Liability to Remote Purchasers for "Economic Loss" Damages—Tort or Contract?*, 114 U. Pa. L. Rev. 539, 541 (1966); Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum. L. Rev. 917, 918 (1966); Note, *Economic Losses and Strict Products Liability: A Record of Judicial Confusion Between Contract and Tort*, 54 Notre Dame Lawyer 118 (1978).

tured and sold." Comment, *Manufacturers' Liability to Remote Purchasers for "Economic Loss" Damages—Tort or Contract?*, 114 U. Pa. L. Rev. 539, 541 (1966). Economic loss has also been described in terms of direct economic loss and consequential economic loss.

> Direct economic loss may be said to encompass damage based on insufficient product value; thus, direct economic loss may be 'out of pocket'—the difference in value between what is given and received—or 'loss of bargain'—the difference between the value of what is received and its value as represented. Direct economic loss also may be measured by costs of replacement and repair. Consequential economic loss includes all indirect loss, such as loss of profits resulting from inability to make use of the defective product.

Note, *Economic Loss in Products Liability Jurisprudence,* 66 Colum. L. Rev. 917, 918 (1966). A complainant's remedy for economic loss alone, without a claim for personal injury or physical harm to property other than the defective product itself, generally lies in a breach of warranty claim, not in a claim in tort.

We held in *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.,* 148 Wis. 2d 910, 921, 437 N.W.2d 213 (1989), that "a commercial purchaser of a product cannot recover solely economic losses from the manufacturer under negligence or strict liability theories, particularly . . . where the warranty given by the manufacturer specifically precludes the recovery of such damages."[4] The defective product in *Sunnyslope* was a backhoe, a piece of construction equipment. Certain

---

[4]For discussions of *Sunnyslope,* see Note, Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.: *What Recovery for Economic Loss—Tort or Contract?,* 1990 Wis. L. Rev. 1337.

parts on the backhoe broke or wore out. The manufacturer and dealer repaired defects covered by the warranty. Sunnyslope sought damages for additional replacement parts, labor charges, down-time expenses and lost profits associated with repairs the warranty specifically excluded. The "economic losses" that were not recoverable in *Sunnyslope* consisted of these repair expenses and lost profits. We limited our holding to "the question of whether damages to the product itself and economic losses flowing therefrom are recoverable in tort when a warranty exists in a commercial setting . . .." 148 Wis. 2d at 911.[5] The court held in *Sunnyslope* that "a commercial purchaser of a product cannot recover solely economic losses from the manufacturer under negligence or strict liability theories, particularly, as here, where the warranty given by the manufacturer specifically precludes the recovery of such damages." 148 Wis. 2d at 921. We expressly did not decide in *Sunnyslope* "whether a warranty can limit amounts recoverable due to damage to property other than the product itself." *Id.*

---

[5]We did not discuss "economic loss" further in *Sunnyslope* or explain what economic losses are. In *Sunnyslope* the court apparently conditioned its application of the "economic loss doctrine" upon the existence of privity: "The issue in this case is whether a commercial purchaser of construction equipment, *which is covered by a manufacturer's warranty,* has a cause of action against the manufacturer in negligence or strict liability to recover lost profits and the costs of repairing the equipment when the manufacturer did not breach its warranty and the equipment failure did not cause personal injury or damage to other property. We only address the question of whether damages to the product itself and economic losses flowing therefrom are recoverable in tort *when a warranty exists in a commercial setting."* 148 Wis. 2d at 911 (emphasis added). See also the court's discussion of *City of LaCrosse v. Schubert, Schroeder & Assoc.,* 72 Wis. 2d 38, 240 N.W.2d 124 (1976), at 148 Wis. 2d at 917.

at 911. In *Sunnyslope* the defective product did not cause injury to another person or other property;[6] the case involved a product that failed to function as expected or anticipated by the purchaser.[7]

[6]In *East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 871 (1986), the United States Supreme Court, interpreting federal admiralty law, held "that a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." In *East River* defective turbines broke down injuring only themselves, not other property. The purchaser of the turbines was not permitted to recover the cost of repairing the turbines and lost profits on a products liability theory because this theory is available only when "the defective product damages other property." 476 U.S. at 872. "In the traditional 'property damage' case, the defective product damages other property. In this case, there was no damage to 'other' property." 476 U.S. at 874. The court declined to address "the issue of whether a tort cause of action can ever be stated in admiralty when the only damages sought are economic." 476 U.S. at 872.

Compare *Twin Disc, Inc. v. Big Bud Tractor, Inc.,* 772 F.2d 1329 (7th Cir. 1985) (no claim in strict liability or negligence for claimed lost profits due to late delivery); *Wisconsin Power & Light Co. v. Westinghouse Elec. Corp.,* 830 F.2d 1405, 1409 (7th Cir. 1987) (declining to "expand" Wisconsin law to permit recovery for economic loss in tort actions where there is no damage to persons or property other than the product itself).

[7]The court of appeals properly described the limited holding of *Sunnyslope* in *Tony Spychalla Farms, Inc. v. Hopkins Agricultural Chemical Company,* 151 Wis. 2d 431, 437–40, 444 N.W.2d 743 (Ct. App. 1989), as follows:

"We do not find *Sunnyslope* authoritative as to whether strict liability may be used to recover for property damage caused by a defective product that is unreasonably dangerous when the defective product damages other property . . ..

"We do not agree that even in a commercial transaction a product manufacturer may limit liability by the use of a warranty to damage done to another's property by a defective product that is

Our holding in *Sunnyslope* was limited and does not resolve this case in which the plaintiffs argue that their property was harmed and the defendant argues that the parties are not in privity. The defendant's attempt to extend *Sunnyslope* to resolve this case focuses on the characterization of the plaintiffs' alleged damages.

The plaintiffs assert that the Monokote caused asbestos contamination that has injured its other property. The plaintiffs argue that the contamination of the shopping centers with asbestos from the Monokote constitutes actual physical harm to their property. The plaintiffs urge that the complaint is not that Monokote has broken down or failed to perform the functions for which it was purchased. The plaintiffs assert that the complaint focuses on what Monokote has done to the shopping centers: It has physically harmed the property causing an unreasonable risk to health and safety. The plaintiffs contend that these allegations of harm to property other than the Monokote itself are sufficient to defeat the motion to dismiss and to entitle the plaintiffs to an opportunity to prove their claims.

The defendant argues that the plaintiffs have not alleged any physical harm to either persons or property. The defendant argues that the plaintiffs' alleged losses are solely "economic," that is, that the product was allegedly of inferior quality. The defendants contend that the

unreasonably dangerous to the user or his property. This is exactly the issue *Sunnyslope* said it was not addressing. *Id.* at 911, 437 N.W.2d at 213. The contractual limitation recognized in *Sunnyslope* applies only to the liability for defects within the product itself. *Sunnyslope* does not permit a manufacturer to claim a contractual limitation on his liability when a defective product that is unreasonably dangerous causes injury to the purchaser or his property.

". . .. Even where the product injures only itself, absent a clear allocation of risk contemplated by the parties and raised by the facts of the case, the limitations of *Sunnyslope* do not apply."

plaintiffs complain about damage to the product itself for which they are limited to contract remedies, not a tort remedy. According to the defendant, any losses suffered by the plaintiffs were incurred because the plaintiffs were dissatisfied with the product itself. Any expenses the plaintiffs incurred for asbestos abatement or any losses they incurred in the sale of the shopping centers were, according to the defendant, unrelated to "asbestos contamination" of the shopping centers and constitute solely economic losses which may not be recovered in strict products liability or negligence suits unless there is injury to person or property. The defendant emphasizes language in the plaintiffs' complaint referring to damage caused by the "mere presence" of the Monokote in the shopping centers. The defendant implies that any asbestos abatement programs the plaintiffs initiated were unnecessary and that the plaintiffs are using the asbestos as an excuse for disappointment in the sale price for their shopping centers. The defendant supports its argument with factual claims that the asbestos in Monokote poses no property or health risk and that the plaintiffs did not allege injury to any person by exposure to asbestos in the shopping malls.

We must assume, for the purposes of this review, that the plaintiffs' factual allegations and reasonable inferences drawn therefrom are true.[8] We must assume

---

[8]The complaint claims damages to the property as follows:

Plaintiffs have suffered harm including damage to and loss of use of their property, diminution of its value at resale, extensive costs for inspection, testing, repair, replacement and removal of asbestos and asbestos-containing products as well as for other measures necessary to abate the health hazard created by the presence of asbestos and asbestos-containing products in the Southridge and Northridge Premises. This harm has been caused solely by the presence of asbes-

that the asbestos in Monokote creates a contaminant in the building that is a health hazard to the occupants of the building.

Our task, then, is to determine whether the plaintiffs have alleged a tort claim for physical harm to property (property other than the allegedly defective product itself) or whether the losses complained of by the plaintiffs are only recoverable under a theory of contract. We must examine the complaint in light of the defendant's arguments on economic loss and the plaintiffs' assertion of physical harm to property.

The alleged damages in this case have characteristics associated with both economic loss and physical harm to property. The allegedly hazardous characteristic of the Monokote is its contamination of the buildings with asbestos. In this kind of case, no outwardly visible evidence of physical harm to the property exists. We infer from the complaint that the harm claimed is that the Monokote causes the air to contain particles of asbestos which are injurious to occupants of the buildings but invisible to the naked eye.

In addition, the plaintiffs' claimed damages—expenses incurred to remove or replace the Monokote and the diminished value of their property due to the presence of the Monokote—appear to be the kind of damages typically associated with defects in the product itself and considered economic losses. The plaintiffs' strict products liability claim is not barred, however, simply because the plaintiffs seek damages for repair costs, replacement costs, decreased value, and lost profits in the sale of the centers. While economic loss is measured by repair costs, replacement costs, loss of prof-

tos and asbestos-containing products in the Southridge Premises and Northridge Premises.

its, or diminution of value, the measure of damages does not determine whether the complaint is for physical harm or economic loss. *City of Manchester v. National Gypsum Co.*, 637 F. Supp. 646, 651 (D.R.I. 1986). In other words, the fact that the measure of the plaintiffs' damages is economic does not transform the nature of its injury into a solely economic loss. *Town of Hooksett School Dt. v. W.R. Grace & Co.*, 617 F. Supp. 126, 131 (D.N.H. 1984). Physical harm to property may be measured by the cost of repairing the buildings to make them safe.

Commentators caution that distinguishing between economic loss and physical harm to property other than the product itself is often a difficult task, especially in cases involving substances whose hazardous qualities are disputed.[9] Several courts have commented on the difficulty of trying to fit a claim for asbestos damage within the framework of physical harm or economic loss which has been established for more traditional tort and contract actions.[10] Nevertheless commentators and courts recognize the necessity of drawing a distinction between contract claims for economic loss and tort claims for physical harm to property. The parties' rights and defenses, such as notice, privity, and the statutes of limi-

---

[9]*See, e.g.,* Comment, *Asbestos in Schools and the Economic Loss Doctrine,* 54 U. Chi. L. Rev. 277 (1987). That the distinction between strict products liability and warranty may be blurred may be explained by the fact that strict products liability in tort evolved from contract warranty theories; in many ways, strict products liability is a way of extending express or implied warranties to a remote purchaser.

[10]*See, e.g., City of Manchester v. National Gypsum Co.,* 637 F. Supp. 646 (D.R.I. 1986); *Board of Education of City of Chicago v. A, C, and S, Inc.,* 131 Ill. 2d 428, 546 N.E.2d 580, 588 (1989).

tations, may turn on whether the claim sounds in tort or contract.

We look to the principles and policy that are the basis for the distinction between tort actions and contract actions to determine into which category the plaintiffs' alleged injury in this case fits. See *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 98 N.J. 555, 489 A.2d 660 (1985).

The distinction between physical harm (tort actions) and economic loss (contract actions) is based on the traditional distinction between tort law and contract law. Tort law rests on obligations imposed by law; contract law rests on obligations imposed by bargain.

The gist of a strict products liability tort case is that the plaintiff has suffered personal injury or property damage caused by a defective product that posed an unreasonable risk of injury to person or property. Tort law is premised on safety. Public policy demands that the manufacturer and seller bear the responsibility for such injury to person or property.

The principle of economic loss, on the other hand, is derived from the law of contract. Recovery for economic loss is intended to protect purchasers from losses suffered because a product failed in its intended use. Recovery for economic loss necessarily focuses on the bargain struck between the parties; warranty law is premised on protection of the bargain. Economic loss is defined, as we stated previously, as damages for inadequate value, because the product is inferior and does not work for the general purpose for which it was manufactured or sold. Liability for economic loss is based on express or implied representations manifesting the manufacturer's or

seller's intent to guarantee the product. Prosser and Keeton on Torts, secs. 95–95A, p. 677 (5th ed. 1984).

Thus defects of suitability and quality are redressed through contract actions and safety hazards through tort actions.[11]

[11]Commentators agree that there are important policy reasons for redressing defects in product quality through contract and safety hazards through tort. Commentators differ, however, on the criteria for making the distinction. One commentator suggested that recovery be allowed in tort only when the physical harm to property caused by the defective property occurs in a "sudden and dangerous manner." "Voluntary allocation of the risks of qualitative and functional defects produces benefits in the market, while placing the risk of catastrophic accidents on the manufacturer serves other important policy considerations. Predictable rules to discriminate between quality and functional risks (economic loss) and other types of risk (physical harm) are necessary to preserve the benefits of both . . .. The sudden and dangerous test provides a workable and accurate distinction between accidents that should be actionable in tort and losses that should remain in the domain of warranty law." Comment, *Asbestos in Schools and the Economic Loss Doctrine,* 54 U. Chi. L. Rev. 277, 299 (1987).

Other commentators suggest that the remedy of tort or contract should be determined by whether the transaction is a consumer or commercial transaction. ". . . the evil that strict liability in tort was intended to remedy: *disparate bargaining power.* When two parties stand in such a position that they are able to bargain fairly and thus equitably apportion the risks inherent in the transaction, the U.C.C. warranty provisions should be upheld." Note, *Economic Losses and Strict Products Liability: A Record of Judicial Confusion Between Contract and Tort,* 54 Notre Dame Lawyer 118, 129 (1978). *See also* Note, Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.: *What Recovery for Economic Loss—Tort or Contract?,* 1990 Wis. L. Rev. at 1360 ("there are strong policy justifications for differentiating between

Both parties cite decisions from other jurisdictions in which the courts struggled with characterizing the harm in cases alleging asbestos contamination of buildings. Many courts have upheld such complaints to be physical harm to property within strict products liability and negligence.[12] Other courts have concluded that

ordinary and commercial consumers based on their bargaining power").

[12]*See also, School District of the City of Independence, Missouri v. U.S. Gypsum Company,* 750 S.W.2d 442 (Mo. App. 1988) (upholding jury verdict awarding the plaintiffs damages for costs of replacing asbestos ceiling tile and other property due to contamination of the buildings by asbestos under a theory of strict product liability); *Town of Hooksett School Dist. v. W.R. Grace Co.,* 617 F. Supp. 126 (D.N.H. 1984) (holding that contamination from asbestos constitutes physical injury to premises and denying motion to dismiss); *Board of Education of City of Chicago v. A, C and S, Inc.,* 131 Ill. 2d 428, 546 N.E.2d 580 (1989) (holding that the school districts sufficiently alleged that asbestos had caused damage to other property so that products liability claim withstands motion to dismiss); *Cinnaminson Township Board of Education v. U.S. Gypsum Co.,* 552 F. Supp. 855 (D.N.J. 1982) (noting the difficulty of classifying asbestos contamination as either economic loss or property damage and concluding that loss suffered by the plaintiff "may technically fall within the ambit of property damage"); *Adams-Arapahoe School District No. 28-J v. Celotex Corp.,* 637 F. Supp. 1207 (D. Colo. 1986) (claims in strict liability and negligence for asbestos contamination in school alleged physical harm and may withstand motion to dismiss); *City of Greenville v. W.R. Grace & Co.,* 640 F. Supp. 559, aff'd 827 F.2d 975 (4th Cir. 1987) (upholding jury verdict awarding damages for asbestos contamination to buildings caused by Monokote under a negligence theory).

The defendant distinguishes some of these cases on the ground that they involve asbestos contamination in schools, where asbestos removal may be required by law. We do not believe that aspect of these cases affects their analysis of whether asbes-

where the complaining party has not really alleged contamination or physical harm to the building or where the risk of future injury from the product is remote and conjectural, the losses are economic losses, actionable in contract, not in negligence or strict products liability.[13]

---

tos contamination in buildings constitutes physical injury to property. The defendant distinguishes other cases as having been effectively overruled because they were decided before *East River* and were based on *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165 (3d Cir. 1981); the defendant argues that the United States Supreme Court in *East River* rejected the risk-based approach set forth in *Pennsylvania Glass.*

For a criticism of the approach taken by these cases, *see* Comment, *Asbestos in Schools and the Economic Loss Doctrine,* 54 U. Chi. L. Rev. 277, 302-03 (1987): ". . . that the asbestos itself poses a continuing danger to users of the building does not implicate tort concerns because this danger of physical harm is speculative and avoidable. It is relevant that the building material became unusable because of a threat of danger rather than through deterioration or aesthetic deficiency. Continued use of a product known to be defective will often be dangerous. Merely because it would be unreasonably dangerous for the owner of an automobile to drive his car knowing the brakes have been defective, he has no tort action against his auto dealer for removal and replacement of his brakes."

[13]*See, e.g., The 3250 Wilshire Blvd. Bldg. v. W.R. Grace & Co.,* 1989 U.S. Dist. Lexis 17287 (C.D. Cal. 1989) (holding that plaintiffs may not recover tort damages under a theory that the mere presence of asbestos constitutes harm; allowing plaintiffs to state claim based on contamination of building with asbestos); *Catasauqua Area School Dist. v. Eagle-Picher Indus., Inc.,* 118 FRD 566 (E.D. Pa. 1988) (no showing of contamination of other property or significant health risks caused by asbestos products); *Franklin County School Bd. v. Lake Asbestos of Quebec, Ltd.,* 1988 U.S. Dist. Lexis 12779 (N.D. Ala. 1988) (tort claims for asbestos in schools dismissed for failure to identify specific manufacturer or to allege a present loss; state does not recognize strict

With these principles in mind we examine the complaint in this case to determine whether the damages the plaintiffs allege are more akin to economic loss or physical harm to property.

The plaintiffs do not appear to assert in their tort counts in the complaint that the Monokote itself was inferior in quality or did not work for its intended purpose, the essence of a claim for economic loss. The plaintiffs are not dissatisfied with the quality of the Monokote as a fireproofing material. The plaintiffs' loss did not arise from deterioration or insufficient product value. The plaintiffs are not claiming damages because of injury to the product itself.

The essence of the plaintiffs' claim is that Monokote releases toxic substances in the environment thereby causing damage to the building and a health hazard to its occupants. The plaintiffs claim that their property has been physically altered by the defendant's product, whether or not such alteration is outwardly visible.

We conclude that the plaintiffs' allegation that the defendant's asbestos-containing product physically harmed the plaintiffs' building is the type of injury which is actionable under claims for relief in strict prod-

liability claims); *Mullen v. Armstrong World Indus., Inc.,* 200 Cal. App. 3d (1988) (motion to dismiss granted because plaintiffs failed to state a cause of action for removal of asbestos from residential housing under "market share" theory of liability); *Arizona v. Cook Paint & Varnish Co.,* 541 F.2d 226 (9th Cir. 1976) (plaintiff's alleged injury from polyurethane foam insulation not recoverable under strict liability or negligence theory); *Sioux City Community School Dt. v. International Tel. & Tel. Corp.,* 461 F. Supp. 662 (N.D. Iowa 1978) (products liability claim for defective rooftop heating units that emitted noxious gases into the air dismissed for failure to allege actual injury to person or property).

ucts liability and negligence. The principles and policies underlying strict products liability actions, namely, public safety and risk sharing, justify recognizing the tort claims.

We conclude that the plaintiffs are entitled to offer evidence to support their claims. Whether the plaintiffs will ultimately prevail on their claim that the defendant's unreasonably dangerous product caused injury to property other than the product itself is a question of fact to be determined at trial, not on a motion to dismiss.[14] Accordingly we hold that the plaintiffs in this case have stated a claim under which relief can be granted.[15]

For the reasons set forth, we reverse the order of the circuit court and remand the cause for further proceedings consistent with this opinion.

---

[14]The defendant claims that no person has ever been injured by the asbestos from the Monokote, that no regulation, federal, state, or local, requires abatement of the shopping centers' fireproofing, and that the type of asbestos found in the Monokote is not a health hazard in buildings such as the plaintiffs' shopping centers.

[15]The plaintiffs in this case did not allege privity in their complaint, nor have they argued privity in this case to any court. The plaintiffs' claim for breach of warranty must therefore be dismissed. Privity is a requirement for a cause of action based on implied warranty. *City of LaCrosse v. Schubert, Schroeder & Assoc., Inc.,* 72 Wis. 2d 38, 41, 240 N.W.2d 124 (1976). *See also* Wis. Civil Jury Instruction 3200 (1971).

The defendant argues that the plaintiffs' claims in nuisance, deceit, strict liability for misrepresentation, and negligent misrepresentation are barred because the plaintiffs have not suffered physical harm to property. Because we conclude that the plaintiffs have alleged physical harm to property rather than solely economic loss, the defendant's argument has no merit.

*By the Court.*—The decision of the circuit court is reversed and the case remanded.

JUSTICE BABLITCH, WILLIAM A., took no part.