BANC ONE BUILDING MANAGEMENT CORPORATION,
Plaintiff-Appellant,†

v.

W.R. GRACE CO.—CONN., W.R. Grace Co., a/k/a W.R.
Grace & Co., Zonolite Division, W.R. Grace & Co.,
Construction Products Division, W.R. Grace & Co. (As
Successor In Interest to Western Mineral Products
Company) and United States Gypsum Company,
Defendants-Respondents. [Case No. 95-3193]

BANC ONE BUILDING MANAGEMENT CORPORATION,
Plaintiff-Appellant,

v.

W.R. GRACE CO.—CONN., W.R. Grace Co., a/k/a W.R.
Grace & Co., Zonolite Division, W.R. Grace & Co. (As
Successor In Interest to Western Mineral Products
Company) and United States Gypsum Company,
Defendants-Respondents. [Case No. 96-0378]

Court of Appeals

*Nos. 95–3193, 96–0378. Submitted on briefs February 4,
1997.—Decided April 1, 1997.*

(Also reported in 565 N.W.2d 154.)

†Petition to review denied.

For the plaintiff-appellant, the cause was submitted on the briefs of *Kent I. Carnell* of *Lawton & Cates, S.C.* of Madison and *Kenneth B. McClain and Steven E. Crick* of *Humphrey, Farrington & McClain, P.C.* of Independence, MO.

For the defendant-respondent W.R. Grace & Co.— Conn., the cause was submitted on the brief of *Thomas G. Cannon, Dean P. Laing and Gregory W. Lyons* of *O'Neil, Cannon & Hollman, S.C.* of Milwaukee.

For the defendant-respondent United States Gypsum Company, the cause was submitted on the brief of *William F. Reilly and Mark G. Blum* of *Hippenmeyer, Reilly & Moodie, S.C.* of Waukesha.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

WEDEMEYER, P.J. Banc One Building Management Corporation (Banc One) appeals from a summary judgment and an amended judgment dismissing its claims against W.R. Grace & Co. and United States Gypsum Company (collectively Grace), for failure to comply with the statute of limitations.

Banc One claims the trial court erred in concluding when its causes of action against Grace accrued. Because the undisputed material facts establish that Banc One knew or should have known that its cause of action accrued prior to April 24, 1983, we affirm.[1]

## I. BACKGROUND

Banc One owns a twenty-two-story bank and office building in the City of Milwaukee. The building was constructed by a previous owner in 1961-62.[2] The steel frame of the building was sprayed with fireproofing products manufactured by Grace. On April 24, 1989, Banc One filed a cause of action against Grace alleging claims of strict liability, negligence, and misrepresentation. Banc One claimed: (1) that Grace was negligent in the design, manufacture and sale of

---

[1] The amended judgment awarded Grace photocopying expenses as taxable costs which Banc One contested and raised as an issue on appeal. With the supreme court's decision in *Kleinke v. Farmers Coop. Supply & Shipping*, 202 Wis. 2d 138, 148, 549 N.W.2d 714, 718 (1996) disallowing photocopying expenses as a taxable cost, Grace concedes that the amended judgment should be reduced by $20,071. This issue is therefore moot, and we do not address it.

[2] Banc One became owner of the building formerly known as the "Marine Plaza" when it acquired the Marine Bank Corporation.

the asbestos-laden fireproofing; (2) that the fireproofing was unreasonably dangerous at the time it was sold; and (3) that Grace misrepresented the health risks associated with the fireproofing. Banc One's complaint sought damages for "reimbursement of the costs of inspection, operation and maintenance, training, analysis, containment, removal and replacement of asbestos and asbestos-containing products, replacement of building improvements necessitated by abatement and loss of use [of] the building." The trial court granted a motion to dismiss the action under the economic loss doctrine, which precludes claims in tort for purely economic loss damage. This court affirmed the trial court's dismissal, but because of the supreme court's decision in *Northridge Co. v. W.R. Grace & Co.*, 162 Wis. 2d 918, 471 N.W.2d 179 (1991), our affirmance was vacated, the trial court's dismissal was reversed, and the case was remanded for further proceedings.[3] Subsequent to discovery, Grace moved for summary judgment on the

---

[3] In *Northridge Co. v. W.R. Grace & Co.*, 162 Wis. 2d 918, 471 N.W.2d. 179 (1991), our supreme court, on bypass, reversed the trial court's judgment of dismissal on the ground that the damage alleged in that asbestos-in-building case was simply a claim for economic loss damages. The supreme court held that the plaintiffs had stated a claim under which relief could be granted. *Id.* at 923, 471 N.W.2d at 180. The supreme court explained that the alleged physical harm to other property consists of the contamination of the plaintiffs' buildings with asbestos from defendant's product, posing a health hazard. *Id.* The opinion goes on to state that the complaint alleges that "Monokote" (the product subject to the present appeal) creates a contaminant in the building that is a health hazard to the occupants of the building. *Id.* at 930-31, 471 N.W.2d at 184. Additionally, it stated that the harm claimed is that the Monokote causes the air to contain particles of asbestos which

basis that Banc One knew or, in the exercise of reasonable diligence, should have known about the presence of asbestos in its building, its potential threat to health, and the certainty of damages as a result of that health threat more than six years prior to the commencement of this action. The trial court agreed and granted the motion. Banc One now appeals.

## II. ANALYSIS

### A. *Standard of Review*.

We review challenges to summary judgments independent of the trial court's decision in keeping with the rubrics of § 802.08, STATS. We first examine the pleadings to determine whether a claim for relief has been stated. *Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473, 477 (1980). If such is the case, our examination shifts to the moving party's affidavits or depositions to determine whether they set forth a *prima facie* claim for summary judgment. If the movant has made a *prima facie* case for summary judgment, we must examine the affidavits and other proof of the opposing party to determine whether disputed material facts exist or whether undisputed facts from which alternative inferences can be drawn exist. *Clark v. Erdmann*, 161 Wis. 2d 428, 441, 468 N.W.2d. 18, 23 (1991). Of further assistance in this review are the precepts that contrary offered conclusions of law do not raise material issues of fact, *see Weber v. City of Hurley*, 13 Wis. 2d 560, 567, 109 N.W.2d 65, 69 (1961), and that summary judgment "methodology does not allow enlargement of the issues

---

are injurious to occupants of the buildings. *Id.* at 931, 471 N.W.2d at 186.

66

beyond those framed by the pleadings. Were the rule otherwise, plaintiff's affidavit opposing a defendant's motion for summary judgment would itself constitute a complaint which must be answered and require a new motion for summary judgment." *C.L. v. Olson*, 140 Wis. 2d 224, 239, 409 N.W.2d 156, 162 (Ct. App. 1987), *aff'd*, 143 Wis. 2d 701, 422 N.W.2d 614 (1988). Finally, "[w]here facts, even if material, are disputed, those facts become irrelevant if, giving full benefit to the party against whom summary judgment is sought, the claim nevertheless is barred as a matter of law." *Byrne v. Bercker*, 176 Wis. 2d 1037, 1045, 501 N.W.2d 402, 405 (1993).

## B. Discussion.

■

The date on which an asbestos property damage claim accrues in Wisconsin for statute of limitation purposes presents an issue of first impression.[4] In determining when causes of action in tort accrue, our supreme court has declared that "tort claims shall accrue on the date the injury is discovered or with reasonable diligence should be discovered whichever occurs first." *Hansen v. A.H. Robbins, Inc.*, 113 Wis. 2d 550, 560, 335 N.W.2d 578, 583 (1983). "If a plaintiff has information that would constitute the basis for an objective belief of her injury and its cause, she has discovered her injury and its cause." *Clark*, 161 Wis.

---

[4] There is no dispute that Banc One's claim is governed by the six-year statute of limitation set forth in § 893.52, STATS. The statute reads: "An action, not arising on contract, to recover damages for an injury to real or personal property shall be commenced within 6 years after the cause of action accrues or be barred, except in the case where a different period is expressly prescribed."

2d at 448, 468 N.W.2d at 26. In later amplification of the "reasonable diligence" requirement, the court explained: "[P]laintiffs may not close their eyes to means of information reasonably accessible to them and must in good faith apply their attention to those particulars which may be inferred to be within their reach." *Spitler v. Dean*, 148 Wis. 2d 630, 637, 436 N.W.2d 308, 311 (1989). Thus, for Banc One's April 24, 1989 claim to survive, Banc One must not have known or, through the exercise of reasonable diligence, would not have known until April 24, 1983, that it had actual injuries, the cause of those injuries and Grace's part in that cause.

Banc One claims that the trial court erred when it concluded that its cause of action accrued upon discovering it owned a product or products containing asbestos. It argues that the mere presence of asbestos in a product is not a tort injury and that its claims could not accrue until it sustained an injury, i.e., the product released asbestos fibers creating contamination which caused injury to property other than the product itself, and it discovered, or reasonably ought to have discovered, the injury. Amplifying, Banc One asserts Grace had to establish that physical harm to property, other than the fireproofing material itself, occurred before April 24, 1983, and that Banc One discovered it or, in the exercise of reasonable diligence, should have discovered it before April 24, 1983.

We are not persuaded. Banc One asserts that the source of the trial court's error was its failure to focus on Banc One's injury. Instead of addressing whether Grace's products released asbestos fibers and contaminated the building, it found that Banc One discovered, or should have discovered, that it owned a product containing asbestos. Thus argues Banc One,

the trial court misinterpreted our remand order to vacate the dismissal order and also ignores *Northridge*. To respond to this assertion, we have reviewed our unpublished opinion of *Banc One Building Management Corporation v. W.R. Grace & Co.*, No. 89-2330, unpublished op. (Wis. Ct. App. Aug. 14, 1990), *Northridge,* and the contents of our remand order. Our review of those materials and the other applicable law demonstrates no merit to Banc One's assertion.

The *Northridge* opinion, contrary to Banc One's averment, does not set forth what factual allegations are necessary to state a claim for asbestos property damage. The sole issue that the supreme court decided was whether the allegations in *Northridge's* complaint were sufficient for a tort claim to withstand a motion to dismiss. The court assumed that the asbestos in the Monokote product creates a contaminant in the building from an allegation of merely "the presence of asbestos and asbestos-containing products in the [named premises]," and held that the alleged physical harm of contamination of the plaintiff's building from the defendants' product was sufficient to withstand the motion. *Id.* at 930-31, 179 N.W.2d at 184. Unlike Banc One, we read nothing more into the decision. Similarly, we find no support for Banc One's position in our

remand order,[5] nor in our unpublished *Banc One I* decision.[6]

[5] We note the body of our remand order:

> Like the plaintiffs in *Northridge*, Banc One Building Management Corporation seeks to recover in tort for damages from the manufacturer of a fireproofing material containing asbestos. In both cases, the complaint was dismissed for failure to state a claim upon which relief can be granted. See 802.06(2)(f), Stats. The *Northridge* court concluded that the complaint stated a tort claim for strict products liability and negligence because the complaint could be interpreted as alleging physical harm to property other than the product itself. Because Banc One's complaint can be construed as alleging physical harm to property other than the fireproofing material itself, the complaint states claims in tort.

(Citation omitted.) The remand then directed summary reversal of the order to dismiss and for further proceedings.

[6] Banc One contends that in our unpublished opinion we held that damage suffered by it was the contamination of its building by asbestos fibers such that the complaint could be construed as alleging physical harm to property other than the fireproofing material and in doing so we relied on *Northridge*. Our first opinion, however, was released ten months before *Northridge* was decided. In reviewing our unpublished opinion in an effort to determine how Banc One could arrive at such a conclusion, we find only the following language that could even vaguely support such a position:

> Based on the Wisconsin Supreme court decision in Sunnyslope, and the United States Supreme Court decision in East River, we affirm the trial court's conclusion and hold that Banc One's damages are purely economic damages, and that any other property damages are de minimis or coincidental to these economic damages. Accordingly the U.C.C., contract law and warranty law apply in this case, and economic damages cannot be the subject of a tort claim. Therefore, Banc One's motion must be dismissed.

As noted above, this order of dismissal was vacated and the case remanded for further proceedings. Further discovery then took place before Grace moved for summary judgment. The net effect

Next, Banc One relies heavily on a distinction made in some jurisdictions between the "presence of asbestos" in a product and the release of asbestos fibers from the product which sequentially contaminate and cause injury to property or person. In doing so, Banc One equates injury only with contamination or the reasonable expectation of injury from the contamination.[7] This proposition ignores the basic tenets of Wisconsin's reasonable discovery rule and the body of case law that has evolved since its creation in *A.H. Robbins.*

---

is that there was no law of the case which Banc One claims we must follow because the basis for dismissal was reversed.

[7] Both parties come armed with a quiver full of cases from other jurisdictions to support their respective positions as to what event triggers the running of a specific statute of limitation. Grace cites *Roseville Plaza Ltd. Partnership v. United States Gypsum Co.,* 31 F.3d 397, 400 (6th Cir. 1994), *Hebron Pub. School Dist. No. 13 v. United States Gypsum Co.,* 953 F.2d 398 (8th Cir. 1992), *Drayton Pub. School Dist. No. 19 v. W.R. Grace & Co.,* 728 F. Supp. 1410, 1412 (D.N.D. 1989) and *Warren Consol. Schools v. W.R. Grace & Co.,* 518 N.W.2d 508 (Mich. Ct. App. 1994) for the position that discovery of the presence of asbestos is the key factor. Banc One responds with six cases found in *San Francisco Unified School Dist. v. W.R. Grace & Co.,* 44 Cal. Rptr.2d 305 (Cal. Ct. App. 1st Dist. 1995). Unfortunately none of these cases discusses the discovery rule in the context of elements necessary to constitute a cause of action. *MDU Resources Group v. W.R. Grace & Co.,* 14 F.3d 1274, 1279 n.8, (8th Cir.), *cert. denied,* 513 U.S. 824 (1994), cited by both parties, alludes to the subject because the trial court erred in its jury instruction in the manner in which the jury was to determine the triggering of the statute of limitations. The reviewing court only mentioned this consideration in anticipation of the new trial which it ordered.

71

*A.H. Robbins* provided a "new benchmark for the accrual of a cause of action, the time when the nature of the injury and its cause are discovered." *Borello v. U.S. Oil Co.*, 130 Wis. 2d 397, 420, 388 N.W.2d 140, 149 (1986). "The statute should not commence to run until the plaintiff with due diligence knows to a reasonable probability of injury, its nature, its cause, and the identity of the allegedly responsible defendant." *Id.* at 420, 388 N.W.2d at 149. The expansion of the rule, however, is not a single-edged plaintiff's weapon but:

> carries with it the requirement that the plaintiff exercise reasonable diligence, which means such diligence as the great majority of persons would use in the same or similar circumstances. *Plaintiffs may not close their eyes to means of information reasonably accessible to them and must in good faith apply their attention to those particulars which may be inferred to be within their reach.*

*Stroh Die Casting Co., Inc. v. Monsanto Co.*, 177 Wis. 2d 91, 103, 502 N.W.2d 132, 136 (Ct. App. 1993) (citation omitted). Thus, reasonable diligence is an equitable tool to ascertain whether a cause of action in all of its constituent parts has reached justiciable fruition.

In its three-pronged complaint, Banc One alleged in paragraph 20: "The presence of asbestos containing products in the . . . building has and will cause it to expend substantial sums of money to abate and manage the unreasonable risk of injury to health and property resulting from the presence of asbestos." And in paragraph 25 it further alleged:

> Plaintiff has and will continue to suffer harm, including damages to and loss of use [of] their property; extensive costs of inspection, testing,

repair, replacement and removal, of asbestos containing products; as well as for other measures including operations and maintenance programs necessary to abate the health hazard created by the presence of asbestos and asbestos containing products in building.

From this review, it is clear that although Banc One may have considered injury from contamination as a part of its damages, it nevertheless couched its complaint in express terms of "presence of asbestos and asbestos containing products" in the building. The complaint does not seek damages as a result of any asbestos-fiber release, but rather seeks damages for the cost of removal because asbestos creates a health hazard.

The trial court, in following the rubrics of summary judgment procedure, first examined Banc One's complaint, more particularly paragraph 25 as recited above. Next it reviewed the exhibits submitted by Grace to support its claim that Banc One had knowledge of its injury prior to the statutory deadline. Then it reviewed the materials submitted by Banc One to decide whether there existed any material issues of fact preventing the granting of summary judgment to Grace. After conducting this review, the trial court concluded: "Banc One's cause of action arose when it was informed of the presence of asbestos, and that precautions were necessary, even if it did not know the extent of the damage at that point." The record supports granting judgment to Grace.[8]

---

[8] The trial court based its decision on pertinent parts of the four documents:

1. A Bureau of Consumer Protection and Environmental Health report identifies a sample of "sprayed-on-insulation to beams and deck of bldg" collected at "111 E. Wisconsin Ave. Marine

It is conceded by Banc One in its complaint that it had knowledge as early as 1961-62 of the presence of asbestos in its building resulting from fireproofing that

Plaza (as the building was formerly known)," submitted to the Milwaukee Health Department. The sample was collected and received on March 17, 1983, and the result was reported on March 30, 1983. This report states that the result of the examination was an asbestos content of "approximately 1% asbestos (chrysotile)." The report results were to be sent to Joe Dahlman at Dahlman Construction Company.

2. An April 4, 1983 letter from Joe Dahlman sent to Robert Crissey, Marine Plaza contact person for the 16th floor remodeling job reciting:

We offer the following qualifications and clarifications to our proposal. . . .

18. Since we found out about the 1% asbestos content in the fireproofing material on Friday, April 1, 1983, we were not able to contact all of the subcontractors to see if it would affect their pricing. Therefore, if we are the low bidder, we would appreciate an opportunity to review our proposal to see if this information would have any impact on our bid.

3. A letter dated April 7, 1983 from Joseph Dahlman to David Robinson, a vice-president of the building management corporation, a subsidiary of the owner of the building stating:

In accordance with your request, we offer the following prices to perform additional work at the Prudential Bache [16th floor] Suite as follows. . . .

2. Additional work associated with the presence of asbestos in the fireproofing material including respirators, throw-away gowns, vacuuming, posting of signs, and collecting of asbestos material in approved bags, add          750.00

3. Perform necessary testing to determine the concentration of asbestos fibers in the area during construction, add          400.00

was purchased from Grace. This knowledge is further corroborated by the depositions of Fred Koier, Chief Engineer and Robert Crissey, building superintendent. In the first quarter of 1983, Banc One began remodeling its 16th floor for a tenant. During March, Joe Dahlman, whose company was involved in performing the 16th floor work, had a meeting with David Robinson, vice-president of the building management company. The subject of the meeting concerned the presence of asbestos in the building. Dahlman believes that Robinson asked him to have a sample of the fireproofing tested for asbestos. On March 17th a sample was taken to the Milwaukee Health Department's Bureau of Consumer Protection and Environmental Health for analysis. On April 1st Dahlman received a report dated March 30th indicating that the fireproofing sample had an asbestos content of approximately 1%. On April 4, 1983, Dahlman wrote to Crissey, then the building manager

---

4. Patch the fireproofing disturbed by new construction                                    +730

The above cost for asbestos related work is based on the assumption that the readings will not exceed two fibers per milliliter. If this concentration is exceeded, then additional measures will have to be taken. We do not feel that this is likely with such a low percentage of asbestos in the fireproofing material.

4. A Sommer-Frey Laboratories, Inc. report, dated July 11, 1983, addressed to Joseph Dahlman of Dahlman Construction Company reporting the results of "Asbestos Monitoring/Marine," stating:

On July 5, 1983, air monitoring was carried out at your work site on the sixteenth floor of the Marine Plaza in an area which, I was informed, will be the offices of Prudential-Bache. The purpose of the monitoring was to determine possible levels of Asbestos fiber exposure to employees in the area.

of Banc One Building Management Corporation who was his contact person regarding a renovation job on the 16th floor of the building. In his letter Dahlman asked for time to review his bid for the job in view of the information received about the presence of asbestos to determine whether it had any impact on his company's bid. On April 7, 1983, Dahlman wrote to Robinson and cited the additional estimated costs incident to the presence of asbestos in the fireproofing. He specifically referred to additional costs relating to respirators, throw-away gowns, vacuuming, posting of signs, collecting of asbestos material in approved bags, additional testing and patching of fireproofing disturbed by the construction process.

Included in the record is a report dated July 11, 1983, from Sommer-Frey Laboratories, Inc. addressed to Dahlman regarding the results of asbestos monitoring. This report corroborates that Dahlman obtained the renovation job on the basis of his revised bid of additional costs that would be incurred by Banc One because of the presence of asbestos in the fireproofing.

Based on the foregoing evidence, we conclude that Banc One had knowledge of more than the "mere presence" of asbestos in its building. As of April 7, 1983, Banc One knew of actual, additional costs associated with removal of the asbestos by virtue of construction for which it had already contracted.[9]

---

[9] Banc One also argues that if we do not reverse the trial court's decision, we will preclude all building owners who know of the mere presence of asbestos in their properties from asserting a claim. This argument is without merit. Our holding is not based only on Banc One's knowledge of the mere presence of asbestos. Rather, we conclude that the evidence

The response submissions of Banc One raise no issues of material fact nor provide any reason why judgment as a matter of law should not have been entered against it. Neither the inability of thirty-four current or former officers, directors and employees of Banc One to remember the 1983 renovation of the 16th floor of the Banc One Plaza building, nor Robinson's inability to recall being informed of testing in 1983, give rise to any issue of material fact because there is no denial that such events occurred. The contents of the April 4th and 7th letters stand uncontroverted.

The essence of Banc One's opposition to Grace's motion is that the contents of the documents referenced above necessitating the adoption of precautionary measures and acceptance of their attendant costs and their incurrence, did not

demonstrates that as of April 7, 1983, Banc One already had suffered harm (as alleged in its complaint): the incurring of additional costs relating to inspection, testing, and removal of asbestos containing products. Further, there is evidence demonstrating that, based on the facts in this case, Banc One should have known in the exercise of reasonable diligence that it had suffered actual damage—harm that has already occurred or is reasonably certain to occur in the future. *See Pritzlaff v. Archdiocese of Milwaukee,* 194 Wis. 2d 302, 533 N.W.2d 780 (1995), *cert. denied,* 116 S. Ct. 920 (1996). This knowledge, together with the fact that Banc One knew that the asbestos fireproofing was the cause of the injuries and that Grace was the proper party to sue, caused Banc One's claim to accrue more than six years prior to the time it commenced this suit. Whether other building owners act with reasonable diligence to discover any potential claims relating to asbestos in buildings will depend on the facts specific to those cases.

demonstrate contamination constituting notice of injury and an actionable claim.[10]

This assertion misses the heart of the matter and turns its back on the precedential guidance of our "discovery rule" and its "due diligence" component. There is no dispute that Banc One, through several of its officials, knew that asbestos existed in the fireproofing and most assuredly vice-president Robinson was aware that the presence of the asbestos-containing fireproofing would require additional costs for preventive procedures. This latter factor was in part the very basis for Banc One's complaint and was within its knowledge earlier than April 7, 1983. Claimed ignorance, forgetfulness and ambivalence in the face of undisputed documentary indicia of knowledge does not equate to reasonable "due diligence." We thus conclude that Banc One was obligated to commence this lawsuit by April 7, 1989. Because it failed to do so, its tort claims are barred by the statute of limitation set forth in § 893.52, STATS.

*By the Court.*—Judgments affirmed.

---

[10] We note with interest Banc One's assertion that it was not aware of contamination in its building so as to trigger the running of the statute of limitations until it received a report from Law Associates dated June 5, 1989. We give no persuasive value to this argument because the record shows that Banc One filed this claim 45 days earlier on April 24, 1989, based on "the presence of asbestos."