DETROIT BOARD OF EDUCATION v CELOTEX CORPORATION
(ON REMAND)

Docket No. 123187. Submitted August 11, 1992, at Lansing. Decided
November 17, 1992, at 9:00 A.M.

The Detroit Board of Education and several hundred public
school districts and private schools brought a class action in the
Wayne Circuit Court against Celotex Corporation and several
other manufacturers, distributors, or installers of building ma-
terials that contain asbestos and were used in the plaintiffs'
school buildings, alleging that asbestos poses a health hazard
whose abatement has caused and will cause the plaintiffs to
incur substantial expenses. The plaintiffs claimed strict liabil-
ity, intentional tort, negligence and wanton misconduct, breach
of express and implied warranties, fraud and misrepresenta-
tion, civil conspiracy, nuisance, concert of action, alternative
liability, and restitution. With respect to the Detroit Board of
Education, the court, James E. Mies, J., granted summary
disposition for the defendants of all claims except those for
nuisance, concert of action, alternative liability, and restitu-
tion. Some defendants, led by GAF Corporation, were denied
leave to appeal in the Court of Appeals the denial of summary
disposition of the remaining claims. The Supreme Court, in lieu
of granting leave, remanded the case to the Court of Appeals
for consideration as on leave granted. 433 Mich 903 (1989). The
Board of Education, and certain defendants, cross appealed.

The Court of Appeals held:

1. The Detroit Board of Education is not limited by the
economic loss doctrine to remedies available under the Uniform
Commercial Code, MCL 440.1101 et seq.; MSA 19.1101 et seq.
That doctrine applies to commercial transactions where buyers
and sellers had the ability to negotiate the terms of sale,
including warranties, disclaimers, and limitation of remedies;
where the losses incurred by buyers because of product defects
are purely economic; and where the public policy of allocating
the risk of unsafe products to manufacturers and sellers would

REFERENCES

Am Jur 2d, Products Liability § 970.

See ALR Index under Asbestos; Nuisance; Products Liability.

not be advanced by allowing tort remedies. Applying the doctrine in this case would not serve the policy considerations that underlie the doctrine.

2. The trial court did not err in ruling that the board's claims of negligence and wanton misconduct, breach of implied warranty, and intentional tort are barred by the three-year statutes of limitation governing actions for injury to person or property, MCL 600.5805(8); MSA 27A.5805(8), and products liability actions, MCL 600.5805(9); MSA 27A.5805(9). The board discovered or, through the exercise of reasonable diligence, should have discovered an injury and the likely cause more than three years before it asserted these claims.

3. The trial court erred in refusing to dismiss the nuisance claim summarily. Manufacturers, sellers, or installers of defective products may not be held liable under a theory of nuisance for injuries caused by product defects. A claim of nuisance involves a use or a condition of property, not a product, and control by the defendant over the use or the condition that constitutes the nuisance. The defendants in this case gave up ownership and control of the asbestos materials to the plaintiffs. Furthermore, public policy underlying the statute of limitations for products liability actions would not be served by allowing a products liability claim to be recast as a nuisance claim.

4. Summary disposition of the claims of equitable restitution and civil conspiracy should have been granted for the defendants. Equitable restitution is not available to the board because its products liability claims are barred by statutes of limitation and its nuisance claim lacks merit. The board's claim of civil conspiracy cannot be sustained, given the absence of a remaining legal or equitable claim.

5. The board's claims of alternative liability and concert of action are rendered moot by the absence of a remaining legal or equitable claim.

Affirmed in part, reversed in part, and remanded for further proceedings involving the remaining plaintiffs and for entry of a judgment against the Detroit Board of Education.

1. PRODUCTS LIABILITY — ASBESTOS — UNIFORM COMMERCIAL CODE.

Products liability and other tort claims brought by an owner of a building against a manufacturer, distributor, or seller of asbestos-containing building materials used in the construction of the building are not barred by the economic loss doctrine, which limits a plaintiff who seeks to recover for economic loss caused by a defective product purchased for commercial pur-

poses to remedies provided under the Uniform Commercial Code (MCL 440.1101 *et seq.*; MSA 19.1101 *et seq.*).

2. NUISANCE — ASBESTOS — PRODUCTS LIABILITY.

A manufacturer, distributor, or seller of building materials containing asbestos cannot be held liable under a theory of nuisance to an owner of a building constructed with such materials for injury to persons, damage to property, or for the cost of abatement of the asbestos hazard.

*Honigman Miller Schwartz & Cohn* (by *Jay E. Brant, William F. Frey,* and *Lee W. Brooks*), for GAF Corporation.

*Dykema Gossett* (by *Ted T. Amsden, Debra M. McCulloch,* and *Ronald J. Torbert*), for United States Gypsum Company.

*Fitzgerald, Cox & Hodgman* (by *William H. Horton* and *Tammy J. Reiss*), and *Hoyle, Morris & Kerr* (by *Arlene Fickler* and *Toni Y. Proffitt*), for National Gypsum Company.

*Sommers, Schwartz, Silver & Schwartz* (by *Leonard B. Schwartz*), for Asbestospray Corporation.

*Collins, Einhorn & Farrell, P.C.* (by *Noreen L. Slank*), for Celotex Corporation.

*Martin, Bacon & Martin, P.C.* (by *John W. Crimando*), for Mechnical Insulation Services.

*Meyer, Kirk, Snyder & Safford* (by *Patrick K. Rode*), for Georgia Pacific Corporation.

*Butzel Long Gust Klein & Van Zile* (by *Daniel P. Malone* and *Lynn A. Sheehy*), for Eagle-Picher Industries, Inc.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Robert S. Krause* and *Robert Powell*), for W.R. Grace & Company.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Daniel P. King*), for Armstrong World Industries, Inc.

*Harvey, Kruse, Westen & Milan, P.C.* (by *Bradley S. Mitseff* and *Terry J. Pawlowski*), for United States Mineral Products Company and Keene Corporation.

*Clark, Klein & Beaumont* (by *Jonathan T. Walton, Jr.*), for A C & S, Inc.

*Freeman McNeill* (by *S. David McNeill*), for Kentile Corporation.

*Cholette, Perkins & Buchanan* (by *Robert J. Riley*), for Basic, Inc.

*Hill Lewis* (by *Bradley A. Carl*), for Pfizer, Inc.

*Kitch, Saurbier, Drutchas, Wagner & Kenney, P.C.* (by *Susan Healy Zitterman* and *Henry L. Gordon*), for Owens-Corning Fiberglas Corporation.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *James J. Hayes, Jr.,* and *Daniel S. Saylor*), for Fibreboard Corporation.

*Warner, Norcross & Judd* (by *William K. Holmes* and *Douglas A. Dozeman*), for Owens-Illinois, Inc., and T & N PLC.

*Plunkett & Cooney, P.C.* (by *Ernest R. Bazzana, Thomas S. McLeod, Richard F. Brennan, Donald H. Dawson, Jr.,* and *Tracey L. Merithew*), for Pittsburgh Corning Corporation, Cleveland Builders Supply Company, and Flintkote Company.

*Taylor, Braun, Manganello & Cardelli* (by *Laura D. Mason*), for Garlock, Inc.

Amicus Curiae:

*Poling, McGaw & Poling, P.C.* (by *Richard B. Poling, Jr., Suzanne C. Stanczyk,* and *Susan L. Raleigh*), for Products Liability Advisory Council.

*Simon, Deitch, Friedman, Siefman & Green, P.C.* (by *Philip J. Goodman* and *Steven G. Silverman*), for Detroit Board of Education et al.

### ON REMAND

Before: MacKenzie, P.J., and Wahls and Sullivan, JJ.

Wahls, J. In this interlocutory appeal from the Wayne Circuit Court, the plaintiff class consists of several hundred public school districts and private schools in Michigan. Defendants are manufacturers, distributors, or installers of a variety of asbestos products that were used in plaintiffs' school buildings. Plaintiffs have brought this action against defendants, alleging numerous theories of liability. Defendants moved for summary disposition against one of the representative plaintiffs, the Board of Education for the School District of Detroit ("the board"), pursuant to MCR 2.116(C)(7), (8), and (10). The trial court granted defendants' motion in part and denied it in part. Several defendants sought leave to appeal the trial court's subsequent order that granted in part and denied in part the parties' motions for reconsideration or clarification. This Court denied leave, but the case was subsequently remanded to us by our Supreme Court "for consideration as on leave granted." 433 Mich 903 (1989). Numerous cross appeals have been filed. The facts before us center on the board's claims, and issues on appeal have been limited by stipulation to the board's (1) nuisance

claim, (2) concert of action claim, and (3) alternative liability claim, and the defendants' statute of limitations defense. We affirm in part, reverse in part, and remand for further proceedings.

I

Some background facts are neatly set forth in the trial court's opinion:

> Between 1973 and 1978, the United States Environmental Protection Agency (EPA) successively barred in buildings the use of various forms of asbestos-containing insulating and construction material. In 1978 and 1979, the EPA developed a school asbestos program to inform school officials of the potential health hazards of exposure to friable asbestos products.[1] In conjunction with this program, booklets were published by the EPA explaining the nature of the problem, how school officials could identify friable asbestos materials in their buildings, and various forms of corrective action that could be taken. School officials were also requested to complete a survey which would assist the EPA in determining contamination levels and the extent of the problem across the country.
>
> * * *
>
> [N]otice of the possible hazards of air borne [sic] asbestos fibers had reached plaintiff [the board] at least by February, 1979. At this time, plaintiff resolved to conduct a survey of its buildings to determine if any had asbestos products. Indeed by June 21, 1979, plaintiff was sent the EPA publications on the subject. In July, 1979, a survey of possible problem areas in 48 buildings was conducted. Asbestos containing materials were found in 19 of the buildings. In the letter to Detroit's Department of Health, dated August 20, 1979, from the State Bureau of Environmental and Oc-

---

[1] "Friable" asbestos is asbestos that can be powdered or crushed by hand.

cupational Health accompanying the report of the laboratory tests for the survey, plaintiff was advised to inspect those areas where asbestos had been found to determine whether there was any reason to believe that it might become airborne. The letter also indicated that the Bureau could test for the presence of airborne asbestos fibers. However, the letter closed by indicating that there was no recommendation for removal of the material *assuming* it could be enclosed or covered up to eliminate the hazard. By early September, 1979, plaintiff was in possession of the survey results.

On September 26, 1979, plaintiff made inquiries of Armstrong Cork [Company], a manufacturer of ceiling tile whose products had been used in one of plaintiff's buildings, to determine whether its products contained asbestos. Significantly, the letter indicates that plaintiff was aware of the EPA's recommendation that friable asbestos materials be removed.

As a result of an inspection done by plaintiff of the buildings found in the July, 1979 survey to have asbestos containing material in 19 buildings, it was recommended by one of plaintiff's employees, in a Progress Report dated October 5, 1979, that the asbestos material be removed. Less drastic measures were recommended to treat the problem in the other buildings. By October 11, 1979, plaintiff began to explore how best to implement these recommendations.

By November, 1979, plaintiff had done a cost estimate of carrying out the above noted recommendations. On November 19, 1979, it submitted to the EPA a funding proposal for the cost of asbestos abatement. The total cost was estimated at $490,000. Although plaintiff never received the funding that it had requested, the recommendations were ultimately carried out.

On January 17, 1983, a class action suit by schools across the country was filed in the United States District Court for the Eastern District of

Pennsylvania. The board and the other plaintiffs in this case opted out of the federal action and filed their own class action in the Wayne Circuit Court on October 12, 1984. Plaintiffs' complaint alleged theories of strict liability, intentional tort, negligence and wanton misconduct, breach of express and implied warranties, fraud and misrepresentation, civil conspiracy, nuisance, concert of action, alternative liability, and restitution. Plaintiffs generally alleged that the presence of asbestos constituted a potential health hazard and that they had and would continue to expend money for asbestos detection and abatement. The trial court granted summary disposition to defendants of all plaintiffs' claims except those for nuisance and the counts grounded upon nuisance as a substantive tort, i.e., concert of action and alternative liability. Summary disposition was also denied with regard to plaintiffs' claim for restitution.

II

Before discussing the four issues stipulated for review, we are obliged to address our Supreme Court's recent opinion in *Neibarger v Universal Cooperatives, Inc,* 439 Mich 512; 486 NW2d 612 (1992).[2] According to *Neibarger,* where a commercial plaintiff seeks to recover only "economic loss" caused by a defective product bought for commercial purposes, the plaintiff's exclusive remedy is provided by the Uniform Commercial Code, MCL 440.1101 *et seq.*; MSA 19.1101 *et seq.* If the UCC provides the exclusive remedy in the present case, then plaintiffs' tort claims would be barred, as likely would any contractual claims arising out of the sale of goods. Unlike the three-year statute of

---

[2] The relevance of *Neibarger* to this case was raised during oral argument.

limitations provided by the Revised Judicature Act for products liability actions, MCL 600.5805(9); MSA 27A.5805(9), the UCC's four-year period of limitation does not excuse a purchaser's lack of knowledge of a defect and runs from the time of delivery. MCL 440.2725(2); MSA 19.2725(2). Because it is likely that most, if not all, of the asbestos-containing materials were purchased by plaintiffs more than four years before their action was brought, their claims would probably be barred under the UCC.

> The economic loss doctrine, simply stated, provides that " '[w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only "economic" losses.' " This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts. [*Neibarger, supra,* pp 520-521, quoting *Kershaw Co Bd of Ed v U S Gypsum Co,* 302 SC 390, 393; 396 SE2d 369 (1990).]

An individual consumer's tort remedy for a defective product is not premised upon an agreement between the parties, but rather on policy considerations and duties imposed by law that allocate the risk of damage caused by an unsafe product to the manufacturer and seller. On the other hand, in a commercial transaction the parties have the ability to bargain for the terms of sale, including warranties, disclaimers, and limitation of remedies. "Where a product proves to be

faulty after the parties have contracted for sale and the only losses are economic, the policy considerations supporting products liability in tort fail to serve the purpose of encouraging the design and production of safer products." *Neibarger, supra,* p 523. Unlike most jurisdictions, Michigan now seems to apply the economic loss doctrine in a manner that bars an action in tort even if damages to other property are caused by the defective product. See *Neibarger, supra* (Levin, J., dissenting).

Assuming that plaintiffs are commercial entities that purchased defendants' goods in transactions that involved bargaining between buyers and sellers, at first blush their complaint appears to seek damages only for "economic losses" arising out of the sale of defective products. Plaintiffs' main claim for damages concerns the costs they have incurred in asbestos abatement. Plaintiffs have not alleged any personal injury, but only "potential" personal injury. Even if plaintiffs had expressly alleged that defendants' products had caused damage to "other property," such as the school buildings, *Neibarger* would not allow a remedy in tort. Nonetheless, we decline to apply the economic loss doctrine in the present case. We believe that the policy considerations that underlie the doctrine would not be served if we were to do so.

It has been said that asbestos cases are unique in the law. See *Chicago Bd of Ed v A, C & S, Inc,* 131 Ill 2d 428; 137 Ill Dec 635; 546 NE2d 580 (1989). The problem posed by asbestos cases is that asbestos products may contaminate a building, rendering it unfit for human occupation and subjecting the owner to abatement costs, without physically damaging the structure itself. Apparently, no jurisdiction has held that an asbestos tort

claim is barred by the economic loss doctrine.[3] Rather, it appears that all jurisdictions that have considered the question have declined to apply the doctrine to cases concerning asbestos contamination of buildings. See, e.g., *City of Greenville v W R Grace & Co,* 827 F2d 975 (CA 4, 1987) (applying South Carolina law); *THS Northstar Associates v W R Grace & Co,* 767 F Supp 969 (D Minn, 1991) (applying Minnesota law); *Hebron Public School Dist v U S Gypsum,* 690 F Supp 866 (D ND, 1988) (applying North Dakota law); *Adams-Arapahoe School Dist v Celotex Corp,* 637 F Supp 1207 (D Colo, 1986) (applying Colorado law); *Independence, Missouri School Dist v U S Gypsum Co,* 750 SW2d 442 (Mo App, 1988); *Chicago Bd of Ed, supra.*

According to *Neibarger,* tort remedies for defective products are premised on a policy of allocating the risk of unsafe products to manufacturers and sellers in order to encourage the design of safer products, and this policy is not served where the parties to a commercial transaction may bargain for the terms and specifications of a sale and the only losses are economic. *Id.* at 523. Essentially, then, policy holds that "defects of suitability and quality are redressed through contract actions and safety hazards through tort actions." *Northridge Co v W R Grace & Co,* 162 Wis 2d 918, 934; 471 NW2d 179 (1991).

In the present case, plaintiffs do not allege that defendants' products were inferior in quality or did not work for their intended purpose. They do not claim any injury to the products themselves.

---

[3] The only case we found in which an appellate court held that an asbestos claim was barred by the economic loss doctrine, *Banc One Building Management Corp v W R Grace & Co—Conn,* unpublished decision of the Wisconsin Court of Appeals, decided August 14, 1990 (Docket No. 89-2330), was impliedly overruled by the Wisconsin Supreme Court's decision in *Northridge Co v W R Grace & Co,* 162 Wis 2d 918; 471 NW2d 179 (1991).

Rather, they claim that defendants' products are safety hazards that have created a potential health threat and caused them to suffer damages in abating the hazard. We also observe that it is highly unlikely that the parties could have anticipated and bargained over the hazards of asbestos at the time the products were sold, which was apparently years before the risks of the material were known.[4] In short, the risk involved here is not the type that is allocated to a party through negotiation. We conclude, on the facts of this case, that plaintiffs' proper remedy lies in tort, not in contract or the UCC.

III

We now turn to the statute of limitations issue. The parties agree that a three-year limitation period applies to plaintiffs' claims, either the three-year period that appplies to actions to recover damages for injury to a person or property, MCL 600.5805(8); MSA 27A.5805(8), or the three-year period for products liability actions, MCL 600.5805(9); MSA 27A.5805(9). The parties also assume that, if the applicable period had not already expired, the running of the period was tolled on January 17, 1983, the date the federal class action was filed, and that the "discovery rule" applies. The trial court held that the board's claim accrued on November 19, 1979, the date on which the board applied for federal funding to abate its asbestos problem. The trial court therefore dismissed the board's claims for breach of implied warranty, negligence, wanton misconduct,

[4] This statement should not be understood to imply that a tort claim may be stated by merely alleging that the parties did not actually negotiate the allocation of a particular risk alleged to be a safety hazard.

and intentional tort.[5] The claims for nuisance and restitution were held timely, as were the claims for conspiracy, concert of action, and alternative liability to the extent that those claims were grounded on nuisance.

On appeal, the board argues that its claim did not accrue until January 30, 1980, the date on which it received the results of an air sampling survey it conducted. The survey showed the presence of airborne asbestos fibers in seven of fifty-four samples. According to the board, because only airborne asbestos fibers are hazardous, it cannot be held to have discovered that its property had been injured at an earlier date. The board concludes that two weeks of the limitation period remained when the federal class action was filed. We disagree.

A products liability claim accrues when the plaintiff discovers or, through the exercise of reasonable diligence, should have discovered an injury and a likely cause of the injury, regardless of whether the plaintiff is able to prove each element of the claim. *Moll v Abbott Laboratories*, 192 Mich App 724; 482 NW2d 197 (1992). The discovery rule does not allow a claim to be held in abeyance indefinitely until a plaintiff obtains professional assistance to determine the existence of the claim. *Id.,* p 734; *Grimm v Ford Motor Co,* 157 Mich App 633, 639; 403 NW2d 482 (1986).

The trial court, utilizing the formulation of the discovery rule set forth in *Bonney v Upjohn Co,* 129 Mich App 18; 342 NW2d 551 (1983),[6] held:

---

[5] Defendants had previously been granted summary disposition with regard to the claims of strict liability, fraud or misrepresentation, any Uniform Commercial Code warranty claims, enterprise liability, and market share liability.

[6] The *Bonney* formulation of the rule was rejected by the panel in *Moll, supra,* which held that the period begins to run when a plaintiff

[T]he Court finds there to be no issue of fact. In particular, the Court notes that it is undisputed that the general hazardous qualities of friable asbestos were well known to plaintiff by [November 19, 1979]. Not only had the EPA barred the use of such materials in buildings in 1978 and instituted a school asbestos program to alert school districts of the dangers of friable asbestos materials, but plaintiff, by June, 1979, had actual knowledge of this. Thus by June, 1979, plaintiff had actual knowledge of the potential hazards of friable asbestos materials in a non [sic] industrial setting. While it may be there was some dispute over the *extent* of the hazard posed by such materials, that friable asbestos materials could and ultimately would cause a health hazard was not really disputed. Furthermore, in the summer of 1979, plaintiff undertook a preliminary investigation to determine whether its buildings had friable asbestos materials. The survey and subsequent analysis completed in September, 1979, showed the presence of such material in some of plaintiff's buildings. Thus, by September, 1979, not only was plaintiff in possession of a general knowledge of the hazards of friable asbestos, but also had actual knowledge that such materials were in its buildings. By October and November, 1979, plaintiff had determined what should be done to abate the hazard and the cost of abatement. Thus by November 19, 1979, the date plaintiff submitted a funding proposal for the estimated costs of abatement, plaintiff had knowledge of hazardous friable asbestos materials in its school buildings, which would require abatement both then and in the future.

The board argues that the record shows that the hazards of asbestos was an "open question" in 1979 and that it therefore cannot be charged with knowledge of its claim. The board's undisputed

has information that would lead a reasonable person to be aware, or after diligent inquiry to become aware, of an injury and its likely cause. *Moll, supra,* p 731. On the facts of this case, no different result would have been reached had the trial court applied *Moll.*

actions in 1979 render this argument disingenuous. For the same reason, the board's claim that it lacked notice until the air sample results were obtained is unpersuasive. Perfect knowledge of the extent of an injury is not a prerequisite to the running of a statutory period of limitation. We also reject the board's argument, unsupported by relevant authority, that no claim arose until it suffered "compensable damages," that is, until the board expended money to abate the hazard. The board's claim arose in fact at the time the products were purchased or installed; the question is when the claim accrued for purposes of the statute of limitations. The board was aware of its "injury" and its likely cause in November 1979, *Moll, supra,* and the board cannot circumvent the statute by arguing that its claim did not accrue until a time of its own choosing. Finally, *Larson v Johns-Manville Sales Corp,* 427 Mich 301; 399 NW2d 1 (1986), is inapplicable to the present claim for property damage, and we decline the board's invitation to apply it here.

The trial court properly held that the board's claim accrued no later than November 19, 1979. Therefore, defendants were correctly granted summary disposition with regard to the claims of negligence and wanton misconduct, breach of implied warranty, and intentional tort. MCR 2.116(C) (7).

IV

The trial court erred, however, when it failed to grant defendants summary disposition of the board's claim of nuisance. The trial court believed that the existence of asbestos products in the board's buildings constituted a continuing nuisance for which the statute of limitations did not

bar recovery, although recovery would be limited to the damages incurred within the limitation period. Defendants' liability was premised on their roles as "creators" of a nuisance. The present case is clearly a products liability action according to the statutory definition. See MCL 600.2945; MSA 27A.2945. The question is whether it may also be characterized as a nuisance action, presumably for a private nuisance. In this issue of first impression, we hold that it may not.

We need not repeat the bewilderment expressed by the courts and secondary authorities concerning the exact boundaries of the tort of "nuisance." Suffice it to say that, despite attempts by appellate courts to rein in this creature, it, like the Hydra, has shown a remarkable resistance to such efforts. We therefore approach our task carefully, hopeful of an analysis worthy of Hercules, rather than his predecessors.

We note initially that all courts that have considered the question have rejected nuisance as a theory of recovery for asbestos contamination.[7] See *City of Manchester v Nat'l Gypsum Co,* 637 F Supp 646, 656 (D RI, 1986); *Hooksett School Dist v W R Grace & Co,* 617 F Supp 126, 133 (D NH, 1984); *Johnson Co, Tenn v U S Gypsum Co,* 580 F Supp 284, 294 (ED Tenn, 1984). See also *Bloomington, In v Westinghouse Electric Corp,* 891 F2d 611, 614 (CA 7, 1989) (manufacturer of PCB not liable on nuisance theory).

The trial court's ruling stemmed from statements made in several opinions of this Court to the effect that nuisance liability may be imposed

---

[7] During oral argument, counsel for the board directed our attention to *Hebron Public School Dist v U S Gypsum Co,* 953 F2d 398 (CA 8, 1992), a case in which a purchaser of asbestos products was allowed to bring a nuisance claim, among others, before a jury in a suit against a manufacturer. There is no indication in the case, however, that the legal viability of the nuisance claim was at issue.

where (1) the defendant has created the nuisance, or (2) the defendant owned or controlled the property from which the nuisance arose, or (3) the defendant employed another to do work that he knew was likely to create a nuisance. *Radloff v Michigan,* 116 Mich App 745, 758; 323 NW2d 541 (1982); *Mitchell v Dep't of Corrections,* 113 Mich App 739, 742; 318 NW2d 507 (1982). The board argued, and the trial court agreed, that because defendants "created" the asbestos products, they are liable for the creation of a nuisance. We disagree for two reasons.

First, and for the moment accepting the formulations of nuisance liability noted above, the trial court's ruling begs the question whether an asbestos product is a nuisance. Obviously, if an asbestos product is not a nuisance, defendants cannot be held liable on a nuisance theory irrespective of their roles in "creating" the products.

> The remoteness of any possibility that a product which has caused injury is legally classifiable as a nuisance for the injurious effects of which the manufacturer or seller may be held liable is apparent. For one thing, the idea of a wrongful use of property (as distinguished from an improper condition of property) is basic to the legal concept of nuisance. For another thing, the role of the "creator" of a nuisance, upon whom liability for nuisance-caused injury is imposed, is one to which manufacturers and sellers seem totally alien. [63 Am Jur 2d, Products Liability, § 593, pp 843-844.]

We agree and hold that manufacturers, sellers, or installers of defective products may not be held liable on a nuisance theory for injuries caused by the defect. To hold otherwise would significantly expand, with unpredictable consequences, the remedies already available to persons injured by products, and not merely asbestos products. This case

presents an example of one such consequence. The bulk of the board's claims are barred by the statute of limitations. The board's nuisance claim survived in the trial court, however, on the basis that the asbestos products were a continuing nuisance that, despite the board's knowledge of its claim, was not barred by the statute of limitations. Statutes of limitation are founded in public needs and public policy, *In re Straight's Estate,* 329 Mich 319, 325; 45 NW2d 300 (1951), and the public would not be served by neutralizing the limitation period by labeling a products liability claim as a nuisance claim.

Second, we agree with defendants that the proposition that nuisance liability may be imposed on a party whose only act was to create the nuisance is overly broad. The law of nuisance is fraught with conditional rules and exceptions that turn on the facts of individual cases, and the cases almost universally concern the use or condition of property, not products.[8] Defendants argue that the

---

[8] For example, 58 Am Jur 2d, Nuisances, § 123, p 764, states in part:

> In lieu of a rule of general application, a functional test has been applied to determine whether the defendant "uses" property in a manner sufficient to subject him to liability for nuisance. A critical factor in this test is whether the defendant exercises control over the property that is the source of the nuisance. Thus, liability of a possessor of land is not based upon responsibility for the creation of the harmful condition, but upon the fact that he has exclusive control over the land and the things done upon it and should have the responsibility of taking reasonable measures to remedy conditions on it that are a source of harm to others.

See also *Oxenrider v Gvoic,* 340 Mich 591; 66 NW2d 80 (1954); *Disappearing Lakes Ass'n v Dep't of Natural Resources,* 121 Mich App 61; 328 NW2d 570 (1982), aff'd *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984), and the cases therein. Compare this "functional test" to the law concerning the liability of former owners of property on which a nuisance is located, set forth at 58 Am Jur 2d, Nuisances, § 126, pp 767-768.

board must show that defendants had control over the alleged nuisance in order for nuisance liability to be found and, because it is undisputed that the asbestos products left defendants' control years earlier when they were sold to the board and the other plaintiffs, defendants cannot be liable for nuisance.

One case in which a "product" negligence action was couched in terms of nuisance is *Beard v Michigan,* 106 Mich App 121; 308 NW2d 185 (1981). In *Beard,* two boys removed a grenade from a Michigan National Guard firing range. The grenade subsequently exploded at a location away from the range, injuring the two. The trial court held that maintenance of the range was a nuisance per se, but that nuisance liability did not extend to injuries sustained from dangerous objects taken from the premises on which the nuisance was maintained. This Court held:

> In the instant case, defendant's liability is based on the maintenance of a dangerous condition resulting from unexploded grenades on defendant's premises. Liability cannot extend to where an object constituting part of the nuisance or the dangerous condition is removed from defendants' premises and thus out of their control. [*Id.* at 126.]

We find *Beard* persuasive. While control over a nuisance at the time of injury may not always be required in a nuisance action, on the facts of this case we hold that it is. This case concerns commercial transactions. Defendants gave up ownership and control of their products when the products were sold to plaintiffs. Defendants now lack the legal right to abate whatever hazards their products may pose; ownership and possession lie exclusively with plaintiffs. "If the defendants exercised no control over the instrumentality, then a rem-

edy directed against them is of little use." *City of Manchester, supra* at 656. Plaintiffs' proper remedies, were they not barred by the running of the limitation period, are products liability actions for negligence or breach of warranty.

We conclude that the board has failed to state a claim of nuisance. MCR 2.116(C)(8). Accordingly, defendants should have been granted summary disposition on this theory. `

V

Defendants should also be granted summary disposition with regard to the board's claim for equitable restitution. We have affirmed the trial court's grant of summary disposition to defendants with regard to all but one of the board's substantive tort claims on the basis of the running of the limitation period. We have also concluded that the board failed to state a claim on its remaining theory of tort liability, nuisance. Where a party has let his legal theories become time-barred by operation of the statute of limitations, he cannot obtain relief in equity. *Lothian v Detroit,* 414 Mich 160, 169-170; 324 NW2d 9 (1982). Likewise, summary disposition should be granted to defendants with regard to the board's claim for civil conspiracy because no legal or equitable claims remain in this case. *Roche v Blair,* 305 Mich 608; 9 NW2d 861 (1943).

VI

The board on cross appeal also argues that the trial court committed several errors with respect to its rulings on the board's theory of alternative liability. Because there are no substantive legal or equitable claims remaining in this case, this issue

is moot. The same is true with regard to the board's argument regarding market share liability and defendants' argument concerning concert of action.

Affirmed in part and reversed in part. Remanded for further proceedings involving the other plaintiffs and consistent with this opinion. Judgment to enter against the board only. We do not retain jurisdiction.