**ROSEVILLE PLAZA LIMITED PARTNERSHIP, Plaintiff–Appellant,**

v.

**UNITED STATES GYPSUM COMPANY, Defendant–Appellee.**

No. 92–2561.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 25, 1994.

Decided Aug. 5, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 28, 1994.

Philip J. Goodman (briefed), Steven·G. Silverman, Simpson & Berry, Birmingham, MI, Kenneth B. McClain, Humphrey, Farrington & McClain, Independence, MO (argued), for Roseville Plaza Ltd. Partnership.

Robert J. Franzinger, Dykema & Gossett, Detroit, MI (argued and briefed), for U.S. Gypsum Co. and W.R. Grace & Co.

Before: MARTIN and BATCHELDER, Circuit Judges; and HULL, District Judge.*

BATCHELDER, Circuit Judge.

Plaintiff Roseville Plaza Limited Partnership ("Roseville") filed this products liability action on May 31, 1991, against defendant United States Gypsum Company ("Gypsum"), for the recovery of asbestos abatement costs. The complaint included claims for negligence, misrepresentation, breach of warranty, civil conspiracy, nuisance and restitution. Following the close of discovery, Gypsum filed four dispositive motions, including a motion for summary judgment. The district court, after hearing oral argument on the motions, found that the action had been filed after the expiration of the statute of limitations, granted Gypsum's motion for summary judgment and dismissed all of the

---

* The Honorable Thomas G. Hull, United States District Judge for the Eastern District of Tennessee, sitting by designation.

claims of Roseville's complaint.[1] For the reasons set forth below, we affirm.

## I

Plaintiff Roseville owns a shopping center in Roseville, Michigan, called Roseville Plaza. During the construction of Roseville Plaza in the early 1960's, asbestos-containing fireproofing material ("ACFM") was sprayed on the structural beams and throughout the building. Roseville contends that Gypsum designed, manufactured and sold the ACFM. Claiming that the dangers presented by the presence of asbestos in the plaza required it to engage in asbestos abatement, Roseville seeks to recover from Gypsum more than $2,000,000 which it represents is the expense of removing and replacing the ACFM.

It is undisputed that this action was filed on May 31, 1991, and that it is governed by Michigan's three-year statute of limitations as well as its discovery rule. *See Detroit Bd. of Educ. v. Celotex Corp.,* 196 Mich.App. 694, 493 N.W.2d 513 (1992). The district court found that Roseville had failed to raise a genuine issue of fact material to the accrual date of its cause of action; the court further found that Roseville's cause of action accrued prior to May 31, 1988, and that the applicable statute of limitations had expired before this action was filed. The district court therefore granted summary judgment to Gypsum and dismissed the complaint. This timely appeal followed.

## II

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. A district court's grant of summary judgment is reviewed de novo. *Pinney Dock*

& *Transp. Corp. v. Penn Cent. Corp.,* 838 F.2d 1445, 1472 (6th Cir.), *cert. denied,* 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). A district court's determination of state law is also reviewed de novo. *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

Roseville contends on appeal that the district court erred in finding that the statute of limitations for this action had expired. Roseville argues that the record is barren of evidence to support the defendant's motion, but contains substantial evidence to support Roseville's claims in regard to the date of accrual of the cause of action; that the trial court erred in assuming that Roseville suffered an actionable wrong prior to May 31, 1988; and that the trial court erred in finding that Roseville knew or should have known of injury prior to May 31, 1988.

Gypsum points to the considerable evidence presented on motion for summary judgment that Roseville's cause of action accrued before May 31, 1988: a letter from the Michigan Department of Public Health dated March 28, 1984; a January 11, 1988 memorandum to the "File" from Richard Gershenson, a partner in the Roseville Plaza Limited Partnership, regarding a "Project" at Roseville Plaza in which the subject of the memo is "Material Abatement;" testimony from Roseville's former Director of Property Management; and other documents that pre-date May 31, 1988, which indicate Roseville's awareness that asbestos abatement was required.

█ The Michigan Supreme Court's recent decision in *Moll v. Abbott Lab.,* 444 Mich. 1, 506 N.W.2d 816 (1993), definitively established the standard for accrual of a products liability cause of action under the discovery rule.[2] In *Moll,* a DES[3] case, the

---

1. The district court held that the restitution claim, viewed as a claim for equitable restitution, was time-barred because the legal theories upon which it was based were time-barred. The court further held that even if the claim were not one for equitable restitution, summary judgment for Gypsum was proper under Michigan law because Roseville had an independent duty to make Roseville Plaza safe and the asbestos abatement was performed in furtherance of this duty. Roseville has not argued the restitution issues in its brief.

2. The Michigan Supreme Court decided *Moll v. Abbott Lab.* after the case now before us was briefed by the parties. Both the district court and the parties discuss at length the Court of Appeals decision in this case, *Moll v. Abbott Lab.,* 192 Mich.App. 724, 482 N.W.2d 197 (1992). The result reached by the district court without benefit of the Michigan Supreme Court's opinion is clearly bolstered by it.

3. Diethylstilbestrol (DES) is a synthetic estrogen which doctors prescribed roughly from 1940

statute of limitations of three years had clearly run and the plaintiff was claiming, first, that the discovery rule was applicable to toll the running of the statute of limitations, and second, that a DES-specific discovery rule should by adopted. The Michigan Supreme Court rejected plaintiffs' contention that a discovery rule specific to DES cases should be adopted, and also rejected the appeals court's characterization of the discovery rule[4]. The Court held that the proper discovery rule standard for products liability cases had been enunciated in *Bonney v. Upjohn Co.,* 129 Mich.App. 18, 342 N.W.2d 551, 554 (1983): "A plaintiff's cause of action accrues when he discovers or, through the exercise of reasonable diligence, should have discovered that he has a possible cause of action." *Moll,* 506 N.W.2d at 827. It is now clear that in Michigan, a products liability plaintiff's cause of action accrues when he discovers, or through reasonable diligence should have discovered, a *possible* cause of action. The facts of this case must be analyzed with that standard in mind.

■ The 1984 Michigan Department of Public Health letter received by Roseville states in pertinent part:

> Since none of the employees were engaged in the removal of insulation from I-beams on March 16, air in the breathing zone of an employee assigned to attaching metal studs to I-beams was sampled for airborne fibers. In addition, a sample of I-beam insulation was submitted to our laboratory for analysis. As can be seen from the enclosed data sheet, the employee's exposure to all types of fibers was within the asbestos fiber Maximum Allowable Concentration (MAC). The insulation analyzed 3 percent asbestos.

Although the asbestos content of the I-beam insulation is low, it is recommended that the insulation be wetted during removal and sealed in labeled plastic bags for burial in a landfill. The employees assigned to the task should wear NIOSH approved toxic dust respirators. For additional information on safe handling procedures for asbestos, see the enclosed Rule 2206.

No violations of the Michigan Occupational Health Standards for General Industry were observed during our investigation.

The district court concluded that this letter, that Roseville acknowledges receiving, provided the information to make Roseville aware in 1984 of the presence of asbestos in the Plaza. The data sheet included with the letter indicated the presence of airborne fibers in one of the two samples analyzed. The data sheet reported 0.24 asbestos fibers per cubic centimeter (f/cc) in one of the samples. The maximum allowable concentration at the time was 2 f/cc. Although at the time, these concentrations did not constitute a violation of the Michigan Occupational Health Standards for General Industry,[5] the 1984 MDOPH letter, along with its accompanying data sheet, specifically informed Roseville of the presence of asbestos.

Roseville argues on appeal, however, as it did in the trial court, that the 1984 MDOPH letter did not provide a basis for accrual of its cause of action since it reported no violations of the Michigan Occupational Health Standards for General Industry. Roseville argues that its claim did not accrue until June 2, 1988, when it received the Environmental Risk Assessment prepared by Clayton Environmental Consultants, Inc. ("Clay-

---

through 1969 to pregnant women who had a history of miscarriages or otherwise were at risk in carrying their pregnancy to term. A myriad of products liability cases were brought alleging that exposure to DES in utero caused genital abnormalities and infertility. *See Moll,* 506 N.W.2d at 820.

**4.** The Court of Appeals in *Moll* had stated that the discovery rule standard was that "a plaintiff's cause of action does not accrue until the plaintiff discovers or through the exercise of reasonable

diligence should have discovered that the plaintiff has been injured and what a likely cause of the injury was." *Moll,* 482 N.W.2d at 201.

**5.** Plaintiff admitted in its brief that in 1986, OSHA reduced the permissible exposure limit from 2 f/cc to .2 f/cc. Thus, from that time, plaintiff's level of .24 f/cc would no longer have been permissible. Through the exercise of reasonable diligence this factor alone indicates that Roseville should have discovered its possible cause of action due to impermissible exposure levels of asbestos.

ton Report"). This report was the result of an environmental assessment of the property which Roseville ordered undertaken at about the same time that Roseville was attempting to refinance the Plaza with Barclay's Bank.[6] Roseville contends it had no knowledge of actual contamination at Roseville Plaza until the Clayton Report informed it of a hazardous situation that needed abatement.

The district court found no material difference between the 1984 MDOPH letter and the Clayton Report, and found plaintiff's contention "unpersuasive." *Roseville Plaza Ltd. Partnership v. United States Gypsum Co.*, 811 F.Supp. 1200, 1208 (E.D.Mich.1992). The district court cited a similar Michigan case, where a school board contended that it could not be held to be aware of a cause of action for asbestos until it received air sample results. The Michigan Court of Appeals stated, "the board's claim that it lacked notice until the air sample results were obtained is unpersuasive. Perfect knowledge of the extent of an injury is not a prerequisite to the running of a statutory period of limitation." *Detroit Bd. of Educ. v. Celotex Corp.*, 493 N.W.2d at 520. That court went on to note that "[t]he board was aware of its 'injury' and its likely cause in November 1979 . . . and the board cannot circumvent the statute by arguing that its claim did not accrue until a time of its own choosing." *Id.* (citation omitted).

The district court gave thorough review to the record presented on the motions for summary judgment and held:

> After considering all of the evidence presented by defendant, and viewing all inferences to be drawn from the underlying facts in a light most favorable to plaintiff, the Court believes that there exists no genuine issue of material fact that plaintiff's cause of action accrued before May 31, 1988, and that the evidence is such that no reasonable jury could find otherwise. *See Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). This is so even accepting plaintiff's argument that it did not discover its cause of action until June 2, 1988; because, under the circumstances of this case, plaintiff *should have* discovered its claims through the exercise of reasonable diligence before May 31, 1988.

*Roseville,* 811 F.Supp. at 1209.

■ After careful review of the record and the law of Michigan, we conclude that the district court was correct. We hold that knowledge of the presence of asbestos is enough to inform an individual, through the exercise of reasonable diligence, of a "possible cause of action" for asbestos abatement or removal. The record in this case establishes that there is no genuine dispute that Roseville had all the information necessary to the discovery of a possible cause of action well before its receipt of the Clayton Report. Roseville is attempting to do here precisely what the *Celotex* court would not allow the school board to do—to delay accrual until receipt of the results of the environmental assessment that Roseville waited to have done until some four years after receiving the MDOPH letter.[7]

That Roseville knew of its possible cause of action before May 31, 1988, is further demonstrated by the evidence that on January 11, 1988, Richard Gershenson, a partner in the Limited Partnership, wrote a memo to the "File" regarding a project at Roseville Plaza. The memo summarizes a meeting between Gershenson and abatement contractors and states, in part, "the following information was obtained at that meeting regarding the cost of hazardous material abatement at Roseville. There is approximately 480,000 s.f. of area that requires removal." The memo goes on to state that removal will cost "in the neighborhood of $5 per s.f."

The district court found that this memo "lends strong support to defendant's argu-

---

**6.** The district court found that the reason Roseville ordered the environmental assessment was in dispute, but that the dispute was not material to the issues. The court noted, however, that the proximity in time of the refinancing and the ordering of the assessment, together with the fact that the removal of all asbestos in the Plaza was a condition of disbursement of the Barclay's loan, were mighty coincidental.

**7.** Roseville received the report on June 2, 1988, two days after the critical date for statute of limitation purposes of May 31, 1988.

ment that plaintiff's cause of action accrued before May 31, 1988." We agree. It is apparent that as of January, 1988, Roseville not only should have been but actually was aware of the necessity of "hazardous material abatement" at the plaza and that large amounts of asbestos "require[d] removal." Thus, in January, 1988, Roseville was aware of a possible cause of action.

Applying Michigan's discovery rule to these facts, we hold that Roseville's cause of action accrued prior to May 31, 1988. Therefore, the May 31, 1991 filing of this claim is beyond the statute of limitations.

### III

For the foregoing reasons, the district court's grant of summary judgment on the basis of the expiration of the statute of limitations is **AFFIRMED.**