*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KN, a legally incapacitated person, by Conservator
JOHN NEWTON,

        Plaintiff-Appellant,

v

AMY SUE JUSTICE, CU* ANSWERS, INC.,
OPEN TERRACE ASSOCIATES, LLC, GR 6000,
LLC, HINMAN LAKE, LLC,

        Defendants,
and

JMAC VENTURES, INC., doing business as STAP
BROS LAWN & LANDSCAPE SERVICE, INC.,

        Defendant-Appellee.

UNPUBLISHED
December 16, 2025
2:45 PM

No. 366531
Kent Circuit Court
LC No. 21-000643-NI

Before: M. J. KELLY, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

Plaintiff-appellant, KN, a legally incapacitated person, by his Conservator John Newton, appeals by leave granted[1] the trial court's order granting summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) to defendant-appellee, JMAC Venture Inc. ("JMAC"), on claims of premises liability, negligence, and public nuisance. On appeal, plaintiff

---

[1] This Court originally denied plaintiff leave to appeal. *KN v Justice*, unpublished order of the Court of Appeals, entered January 31, 2024 (Docket No. 366531). Later, the Michigan Supreme Court remanded this case to this Court for consideration as on leave granted. *KN v Justice*, 10 NW3d 855 (Mich, 2024).

contends the trial court erred by granting summary disposition in defendant's favor on his negligence and nuisance claims. We affirm.

## I. BASIC FACTS AND PROCEDURAL POSTURE

This case stems from an automobile accident in which defendant Amy Justice struck plaintiff, who was walking in the street to avoid sprinklers spraying the sidewalk and a portion of the street. On September 17, 2019, at approximately 10:30 p.m., plaintiff was walking eastbound along a sidewalk on the south side of 28th Street in Grand Rapids.[2] As he walked down the sidewalk, plaintiff encountered several rotating sprinklers on defendant GR 6000, LLC's, property spraying water over the sidewalk and into the curbside lane of eastbound 28th Street. To his right, there was a drop-off with trees or bushes that led down to a retention pond. To his left, on the side closest to the street was a strip of grass where the sprinkler heads were located. To avoid getting sprayed by water, plaintiff entered the curbside lane of 28th Street and walked with his back to oncoming traffic. While plaintiff walked in the street, he was struck by Justice, who was traveling eastbound in the curbside lane.

Justice testified that plaintiff was wearing all dark clothing and was walking in the center of the right lane. When she saw plaintiff in the roadway, she tried to swerve left to avoid striking him, but could not do so in time. She also testified that the passenger side of her vehicle was struck by water from the sprinklers immediately before she hit plaintiff. A police report from the night of the incident noted that water from the sprinklers was spraying water almost across the curbside lane of 28th Street. As a result of the accident, plaintiff suffered multiple injuries, including a severe traumatic brain injury.

The following day, Sergeant Ryan Dannenberg of the Kent County Sheriff's Department met with Scott Werner, a sprinkler technician employed by JMAC, and a representative from the business located on the property. After Werner turned the sprinklers on, Sergeant Dannenberg took pictures of the sprinklers and documented that "multiple sprinklers [shot] into the roadway to varying degrees." Sergeant Dannenberg gave Werner permission to adjust the sprinkler heads. Werner adjusted the sprinklers to spray away from the street, but could not recall how many sprinkler heads he adjusted or whether any of them were dirty or damaged.

JMAC had a contract to provide landscape site maintenance services to the property. Pursuant to the contract, JMAC started the sprinklers in the spring, winterized the sprinklers in the fall, and repaired the sprinkler system when necessary. According to John Wiebenga, the owner of JMAC, JMAC had not designed the sprinklers or installed the sprinklers on the property. Wiebenga explained that when JMAC started the sprinkler system in the spring, the technician would adjust the sprinkler heads so that they sprayed water where they were designed to spray. On the property at issue, the sprinklers were programmed to spray from curb to curb over the

---

[2] Twenty-eighth Street is a five-lane roadway comprised of two lanes in both an east and west direction and a center lane for left turns. It is a major roadway with a large number of retail and commercial establishments. It is a Michigan trunk line road, designated as M-11.

sidewalk, but not into the street. The sprinkler zone was set to run from 10:20 to 10:40 p.m. JMAC was not contractually obliged to inspect the sprinkler system. If a problem was discovered in the sprinkler system after JMAC started the system in the spring, JMAC would only send a technician to the property for repairs if it was notified of a problem. In this case, JMAC was not notified that one or more sprinklers were spraying into the street before the accident occurred on September 17.

Werner was the technician who had started the property's sprinkler system on behalf of JMAC in Spring 2019. Werner estimated that he started the property's sprinkler system in either April or May 2019. He could not recall how the sprinklers were operating when he started them up; however, he testified that he would have adjusted or replaced the sprinklers if they were spraying into the street. He was confident that when he finished the startup, the sprinklers were not spraying into the street. Generally, Werner explained that "[a]ny number of things" could cause a sprinkler head to become unaligned during the season. As examples, he stated the sprinkler head could be damaged, dirt could have gotten inside the sprinkler head, or the age of the sprinkler head could have caused it to fail. Similarly, Wiebenga stated that "contact from [a] motor vehicle's tires can cause sprinkler heads to spray" in an unintended direction. Notably, Wiebenga stated that when he was at the property after the accident, he saw a Federal Express truck turn right onto 28th Street from the driveway directly west of the property and roll over multiple sprinkler heads along 28th Street with its tires.

In January 2021, plaintiff filed a complaint against defendants. As relevant to this appeal, plaintiff asserted a claim of premises liability, negligence, and public nuisance against JMAC, alleging that JMAC's technician misaligned the sprinklers during the spring startup. JMAC moved for summary disposition under MCR 2.116(C)(10). JMAC argued it was entitled to summary disposition on the premises liability claim because JMAC was neither the owner nor possessor of the property. JMAC argued it was entitled to summary disposition on the negligence claim because it did not owe a duty to KN or, if it did owe a duty to KN, it did not breach that duty. JMAC finally argued it was entitled to summary disposition on the public nuisance claim because it did not create the alleged nuisance or have possession or control of the property at the time of plaintiff's injuries. In response, plaintiff did not address JMAC's argument regarding premises liability, but otherwise argued JMAC owed plaintiff a common-law duty to use due care in operating and calibrating the sprinklers and that JMAC breached that duty by adjusting the sprinklers to spray into the street. Plaintiff also argued that JMAC had a statutory duty to avoid interfering with traffic under MCL 257.676b, as well as a duty to avoid obstructing the sidewalk pursuant to Charter Township of Cascade, Ordinance No. 287-9. Finally, plaintiff argued that JMAC's calibration of the sprinklers to spray into the street was an unreasonable interference with the public's right to travel the sidewalk.

The trial court granted summary disposition in JMAC's favor. The trial court noted plaintiff's acknowledgment that the premises liability claim should be dismissed. The trial court found that plaintiff's negligence claim failed because JMAC did not create a "new hazard" when performing its duty under the contract after noting JMAC did not install the sprinklers and Werner's testimony that he ensured the sprinklers sprayed as intended during the spring startup was undisputed. The trial court further found that JMAC did not owe a duty separate and distinct from its contractual obligations. The trial court also found that plaintiff's public nuisance claim failed because JMAC did not create the alleged nuisance or have control over the nuisance at the

-3-

relevant time. Thereafter, the trial court denied plaintiff's motion for reconsideration. This appeal followed.

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision on a summary disposition motion. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Additionally, we review de novo the determination whether a duty exists, *Hill v Sears, Roebuck & Co*, 492 Mich 651, 659; 822 NW2d 190 (2012), and questions of contractual or statutory interpretation, *Dobbelaere v Auto-Owners Ins Co*, 275 Mich App 527, 529; 740 NW2d 503 (2007).

A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Maiden*, 461 Mich at 120. The moving party has the initial burden to "submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Quinto v Cross & Peters Co*, 451 Mich 358, 361-362; 547 NW2d 314 (1996) (quotation marks and citation omitted). Once met, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4). See also *Quinto*, 451 Mich at 362. "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). A court properly grants summary disposition when the moving party establishes, except for the amount of damages, there is no genuine issue as to any material fact. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich at 160 (quotation marks and citation omitted).

## III. NEGLIGENCE

Plaintiff first argues the trial court erred by granting summary disposition to JMAC on plaintiff's negligence claim on the elements of duty and breach. We disagree.

To establish a prima facie case of negligence, a plaintiff must satisfy four elements: "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Hill*, 492 Mich at 660 (quotation marks and citation omitted). In a negligence action, a defendant cannot be held liable to a plaintiff unless the defendant owed the plaintiff a legal duty. *Fultz v Union-Commerce Assoc,* 470 Mich 460, 463; 683 NW2d 587 (2004). A court may analyze a tort action that is premised on a contract and brought by a plaintiff who is not a party to the contract under a "separate and distinct mode of analysis." *Id*. at 467 (quotation marks and citation omitted).

"[T]he threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations. If no independent duty exists, no tort action based on a contract will lie" *Id*. A separate and distinct duty to support a tort action can arise by statute, or by preexisting tort principles, including duties imposed because of a special relationship between the parties or the generally recognized common-law duty to use due care in

-4-

undertakings. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 170; 809 NW2d 553 (2011). The *Loweke* Court explained that defendants performing an act under a contract are "not relieved of its preexisting common-law duty to use ordinary care in order to avoid physical harm to foreseeable persons and property in the execution of its undertakings." *Id*. at 172.[3]

In this case, JMAC's contract with GR 6000 required it to "[s]tartup and repair" the sprinkler system at the property. Plaintiff was not a party to the contract between JMAC and GR 6000. As such, JMAC did not owe plaintiff any contractual duty, but in performing the spring startup, JMAC had a common-law duty to use ordinary care in order to avoid physical harm to foreseeable persons and property.[4] *Id*. According to plaintiff's theory of negligence, JMAC breached this common-law duty because Werner must have miscalibrated the sprinklers to spray water over the sidewalk and into 28th street when he started the sprinklers in Spring 2019. Under plaintiff's theory, this caused a hazard by blocking the sidewalk and the portion of the street closest to the curb and forced plaintiff to walk out further into the roadway to avoid the water stream.[5] However, the record evidence does not suggest that JMAC created the hazard. See *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95, 112 n 2; 1 NW3d 44 (2023) ("[W]here the evidence presented to a court concerning breach generates no questions of fact, the issue can be decided by the judge as a matter of law.").

In support of its motion for summary disposition, JMAC satisfied its initial burden of showing that plaintiff failed to present sufficient evidence that Werner miscalibrated the sprinkler heads during the spring startup. *Quinto*, 451 Mich at 361-362. Werner testified that he could not

---

[3] Beyond stating that a duty may arise from a statute, plaintiff fails to argue how a duty arose under MCL 257.676b, or Charter Township of Cascade, Ordinance No. 287-9. "The Legislature can create a duty by statute, but not every statute creates such a duty." *Randall v Mich High Sch Athletic Ass'n*, 334 Mich App 697, 720; 965 NW2d 690 (2020). Courts consider two questions to determine whether a statute creates a duty: "(1) did the Legislature intend that the statute would prevent the type of injury and harm actually suffered by the party; and (2) did the Legislature intend that the party was within the class of persons protected by the statute?" *Id*. Upon review of the statute, it did not impose a duty on defendant to adjust the sprinkler heads away from the street. MCL 257.676b addresses the interference "with the normal flow of vehicular, streetcar, or pedestrian traffic upon a public street or highway in this state, by means of a barricade, object, or device, or with his or her person." Plainly, the stream of water at issue in this case was not a "barricade, object, or device" that would "block, obstruct, or impede" traffic. MCL 257.676b. The ordinance states "[n]o person shall obstruct or occupy . . . the pedestrian path or sidewalk." Even if plaintiff could establish a violation of the ordinance, a "violation of an ordinance, without more, will not serve as the basis for imposing a legal duty cognizable in negligence theory." *Ward v Frank's Nursery & Crafts, Inc*¸186 Mich App 120, 135; 463 NW2d 442 (1990). See also *Summers v Detroit*, 206 Mich App 46, 52; 520 NW2d 356 (1994).

[4] We make no conclusion whether plaintiff was a "foreseeable person" under the "separate and distinct" mode of analysis.

[5] Plaintiff concedes that the decision for the sprinkler stream to spray over the sidewalk was a situation outside the control of JMAC.

recall how the sprinklers were operating when he started them up in Spring 2019; however, he stated that he would have adjusted or replaced the sprinklers if they were spraying into the street, and he was confident that when he finished the startup, the sprinklers were not spraying into the street. This evidence supports that Werner, acting on behalf of JMAC, did not create a hazard by misaligning the sprinkler heads to spray into the street during the spring startup.

The burden then shifted to plaintiff to point to specific facts to support that Werner misaligned the sprinkler heads during the spring startup. *Id*. at 362. In response to JMAC's motion, plaintiff relied on photographs taken by Sergeant Dannenberg the day after the accident which showed that six sprinkler heads sprayed water into the roadway to varying degrees. According to Sergeant Dannenberg, these sprinkler heads needed to be adjusted and Werner testified that he adjusted the sprinkler heads the day he met with Sergeant Dannenberg. Plaintiff asserts that the fact that numerous sprinkler heads needed to be recalibrated the day after the accident supports that Werner did not adjust them to spray water only from curb to curb during the spring startup. However, approximately four months went by between when Werner started up the sprinkler system and when the accident occurred. Both Werner and Wiebenga testified that sprinkler heads that were calibrated to spray in a specific pattern can become misaligned because of "[a]ny number of things." For example, they can become misaligned if the sprinkler head is damaged, if it becomes impacted with dirt, or if the age of the sprinkler head causes it to fail. Evidence that a number of the sprinkler heads were misaligned the day of the accident did not support that they were misaligned four months earlier on the day of the spring startup. The four months between the spring startup and the accident are sufficient time for something to happen, such as the sprinkler head becoming impacted with dirt or getting run over by a tire, to shift the alignment of the sprinkler heads. Plaintiff has offered nothing beyond speculation that the sprinkler heads were misaligned the day of the accident because of Werner's conduct. This is insufficient to establish a genuine issue of material fact regarding breach.

Viewing the evidence in the light most favorable to plaintiff as the nonmoving party, the only record evidence addressing the alignment of the sprinkler heads during the spring startup was Werner's testimony that he did not misalign the sprinkler heads. We note that generally in a motion for summary disposition, the party opposing summary disposition may not rely on the fact that a jury might disbelieve a witness to establish a genuine issue of material fact. *Franks v Franks*, 330 Mich App 69; 89; 944 NW2d 388 (2019). However, a limited exception to this rule applies "to those situations in which the moving party relies on subjective matters that are exclusively within the knowledge of its own witness and those in which the witness would have the motivation to testify to a version of events that are favorable to the moving party." *Id*. at 90-91. Certainly, this is an instance in which Werner, an employee of JMAC, may be motivated to testify about a version of events that is favorable to JMAC. However, we conclude this limited exception is inapplicable because the issue of the misalignment of the sprinkler heads is not a subjective matter exclusively within the knowledge of Werner. The sprinklers were adjacent to a public roadway and on property in which a business was regularly operated. Plaintiff had the opportunity during discovery to develop evidence from the four months between the spring startup and the accident and from parties other than defendant that would support its theory that the sprinkler heads were misaligned during the spring startup. We therefore conclude that the trial court did not err by granting summary disposition of plaintiff's negligence claim in JMAC's favor.

## IV. PUBLIC NUISANCE

Plaintiff also argues that the trial court erred by granting summary disposition to JMAC on the public nuisance claim. We disagree.

"A public nuisance is an unreasonable interference with a common right enjoyed by the general public." *Cloverleaf Car Co v Phillips Petroleum Co*, 213 Mich App 186, 190; 540 NW2d 297 (1995). The term "unreasonable interference" refers to "conduct that (1) significantly interferes with the public's health, safety, peace, comfort, or convenience, (2) is proscribed by law, or (3) is known or should have been known by the actor to be of a continuing nature that produces a permanent or long-lasting, significant effect on these rights." *Id*. "A defendant is liable for a nuisance where (1) the defendant created the nuisance, (2) the defendant owned or controlled the land from which the nuisance arose, or (3) the defendant employed another person to do work from which the defendant knew a nuisance would likely arise." *Id*. at 191.

The alleged nuisance in this case is the sprinkler heads spraying water over the sidewalk and into 28th Street. When granting summary disposition on this issue, the trial court concluded that plaintiff's public nuisance claim failed because JMAC did not (1) have control over the property at the relevant time, or (2) create the alleged nuisance.

Regarding JMAC's control over the property, the trial court reasoned that this case involved a commercial transaction and JMAC, at the time of the accident, did not have control of the sprinkler heads. Control over the nuisance at the time of the injury is not always required. *Detroit Bd of Educ v Celotex Corp (On Remand)*, 196 Mich App 694, 712; 493 NW2d 513 (1992). However, in commercial transactions in which a defendant gave up ownership and control of a product when the product was sold to the plaintiff, the defendant could not be held liable for nuisance. *Gelman Sciences, Inc v Dow Chem Co*, 202 Mich App 250, 252; 508 NW2d 142 (1993); *Detroit Bd of Educ*, 196 Mich App at 712. In this case, JMAC and GR 6000's contract did not involve the sale of any products. Therefore, control over the alleged nuisance was not required in this case. Nonetheless, we conclude that because JMAC was only required to service the sprinklers twice a year and was not required to regularly inspect the sprinklers, the trial court did not err by finding that JMAC did not have control over the property at the relevant time.

Regarding JMAC's creation of the alleged nuisance, as previously stated, we conclude that there is no genuine issue of material fact whether Werner miscalibrated the sprinkler heads in the spring, the only theory upon which JMAC could be believed to have created the alleged nuisance. Therefore, the trial court did not err in granting summary disposition in JMAC's favor on plaintiff's public nuisance claim.

Affirmed.

/s/ Michael J. Kelly
/s/ James Robert Redford
/s/ Kathleen A. Feeney